399 So.2d 498 (1981)
Graham C. OWEN, Personal Representative of the Estate of Emily Miller, Deceased, Appellant/Cross-Appellee,
v.
Helen Ott WILSON, Pauline W. Tate, Flint Wilson, Jr., As the Heirs of F.S. Wilson, Deceased, Appellees/Cross-Appellants.
No. 80-1154.
District Court of Appeal of Florida, Fifth District.
June 10, 1981.
*499 Thomas D. Sawaya, Ocala, for appellant/cross-appellee.
Young J. Simmons of Green, Simmons, Green, Hightower & Gray, P.A., Ocala, for appellees/cross-appellants.
DAUKSCH, Chief Judge.
This is an appeal of an Order Determining Heirs, Approving Accounting and Directing Distribution. The main issue is whether Florida's nonademption statute, section 732.606, Florida Statutes (1979), applies to a devise by a ward of a voluntary guardianship. Sec. 744.341, Fla. Stat. (1979).
However, before addressing this issue we must note that the trial court was without jurisdiction to enter an amended final order after the issue had been appealed to this court. The trial court rendered its final order on August 29, 1980. Appellant Owen then filed an objection and motion to amend this final order on September 8, 1980, contending that it did not conform with the evidence. Before the trial court considered this objection, appellant Owen filed a timely notice of appeal on September 29, 1980, appealing the August 29th final order. Once appellant filed his notice of appeal, the trial court was without jurisdiction to reconsider "the subject matter of the appeal until the appeal is determined or unless authorized by the appellate court." General Portland Land Development v. Stevens, 356 So.2d 840, 842 (Fla. 4th DCA 1978). See also Strauser v. Strauser, 303 So.2d 663 (Fla. 4th DCA 1974); Hutchinson v. Wintrode, 286 So.2d 231 (Fla. 2d DCA 1973). Therefore the order on appeal before this court is that final order entered on August 29, 1980.
In 1974, Jean Simpson, who was 87 years old and had recently suffered a broken hip, voluntarily petitioned to have the court appoint Sun Bank of Ocala as guardian of her property. An order was entered by the court appointing Sun Bank as guardian because of Simpson's infirmity. Simpson then executed a will in 1975 specifically devising her house to Emily Miller.[1] In 1978, Sun Bank, as guardian for Simpson, petitioned for court approval of the sale of this house to provide money for her care and maintenance even though there existed over $30,000.00 in Simpson's savings account. The court approved the sale of this house, the house was sold and the proceeds were for *500 the most part invested in two bonds. Simpson died in 1979 with an estate valued at approximately $79,907.00. Her estate included the two bonds which had been purchased with proceeds from the sale of her house as these moneys had not been needed for her care or maintenance. Simpson had never been declared mentally incompetent.
The initial Petition to Approve Accounting and Direct Distribution requested the court to distribute to Emily Miller the proceeds from the sale of Simpson's house because of the provisions of the nonademption statute, section 732.606, Florida Statutes (1979). After due objections and amendments, the trial court concluded that section 732.606(1), did not apply because Simpson had never been declared mentally incompetent; Florida case law had adopted the "intention theory" of ademption;[2] and there was an ademption because Simpson had intended to sell her house and adeem this devise.
The trial court erred in finding that prior case law determined the applicability of section 732.606. The legislative enactment of new probate provisions in Chapter 74-106, Laws of Florida, evinces an intent to provide a new scheme as set forth in Chapters 731-735, Florida Statutes. Since section 732.606 was adopted as modified from the Uniform Probate Code, we find that the Legislature wanted Florida's law to be similar to the laws of our sister states adopting this provision rather than prior Florida case law. To give effect to section 732.606, any unpaid proceeds of specific devises are to be paid to the devisee regardless of intent; when "specifically devised property is sold by a guardian of the property for the care and maintenance of the ward, ... the specific devisee has the right to a general pecuniary devise equal to the net sale price... ." Sec. 732.606(1), Fla. Stat. (1979).
The Florida Probate Code does not define "guardian." Chapter 744, Florida Statutes, provides for guardians of persons mentally or physically incompetent[3] and voluntary guardianships.[4] Although these statutes clearly delineate two different types of guardianship, each uses the term "guardian." We conclude that absent any intention to only apply to guardians of incompetent persons, section 732.606(1) applies to both guardians of incompetent persons and guardians of persons under voluntary guardianships.
We therefore reverse the final order of August 29, 1980, and remand to the trial court for entry of a proper order distributing to Emily Miller the proceeds from the sale of Simpson's house.
REVERSED AND REMANDED.
ORFINGER and SHARP, JJ., concur.
NOTES
[1] Emily Miller, deceased, was living at the time of Simpson's death.
[2] Eisenschenk v. Fowler, 82 So.2d 876 (Fla. 1965), and Forbes v. Burket, 181 So.2d 682 (Fla. 2d DCA 1966), after remand, 208 So.2d 670 (Fla. 2d DCA 1968).
[3] § 744.331, Fla. Stat.
[4] § 744.341, Fla. Stat.