845 P.2d 1247

In the Matter of the ESTATE OF
Elizabeth Dycus GARDNER,
Deceased.

Lindsey GARDNER, Dave Gardner, and
Duane Gardner, Petitioners–
Appellees,

v.

Jeanne W. GHOLSON, Personal
Representative, Respondent–
Appellant.

No. 12748.

Court of Appeals of New Mexico.

Oct. 30, 1992.

Certiorari Denied Jan. 22, 1993.

Mark Adams, Patricia M. Taylor, Lisa Pistorio Ford, Rodey, Dickason, Sloan, Akin, & Robb, P.A., Albuquerque, for petitioners-appellees.

Robert D. Benson, Farmington, Winston Roberts–Hohl, Santa Fe, for respondent-appellant.

## OPINION

APODACA, Judge.

Jeanne W. Gholson (Gholson), the personal representative of the estate of her mother, Elizabeth Dycus Gardner (decedent), appeals a judgment of the district court rendered under the Probate Code, NMSA 1978, §§ 45-1-101 to 45-7-401 (Repl.Pamp.1989 & Cum.Supp.1992), ordering a redistribution of the estate. She makes eight arguments on appeal, which we consolidate as five issues: whether (1) Section 45-2-608 applies to the facts of this case; (2) petitioners' claims were untimely filed; (3) substantial evidence supports the district court's findings of breach of fiduciary duty; (4) clear and convincing evidence supports the district court's findings and conclusions regarding fraud; and (5) the district court erred in granting attorney fees to petitioners while denying them to Gholson. Not persuaded by Gholson's argument on any of these issues, we affirm the district court's ruling.

## BACKGROUND

Decedent died March 19, 1989, survived by her three daughters from her first marriage, Gholson, Avon Magee, and Paula Westbrook, as well as by her three grandchildren, Lindsey, Duane, and Dave Gardner (collectively referred to as petitioners). Petitioners were the children of decedent's son by her second marriage, Thomas Gardner. Thomas Gardner was married to Sandra Gardner, who was granted legal and physical custody of petitioners after she and Thomas Gardner divorced in 1977.

Thomas Gardner and his half-sisters had been told that Thomas Gardner would inherit the Otto Amsden Place, an eight-acre tract in Farmington, New Mexico (the Amsden property), and the half-sisters would inherit a 300-acre ranch in Archer County, Texas (the Archer property). Decedent's

will devised the Amsden property to Thomas Gardner and, should Thomas Gardner predecease his mother, to his surviving children in equal shares. Decedent's will devised the residue of her estate and the Archer property to her daughters in equal shares.

Decedent suffered a stroke ten years before her death. At that time, she owned both the Archer and Amsden properties. After her stroke, decedent was adjudged incompetent and Gholson was named guardian of her estate. The order naming Gholson "guardian" granted her the power to manage and control the Amsden property, which was rental property, and "the authority to deposit money in the account at Farmington National Bank and also to withdraw funds from the same account to pay the necessary [hospitalization] expenses * * * of Elizabeth Dycus Gardner and pay the reasonable expenses of the rental property." The district court later granted Gholson the additional authority to "sell any real estate interest owned by Elizabeth Dycus Gardner with all sums in excess of the monthly requirements to be placed in a guardianship and trust account."

On October 22, 1980, pursuant to this authority, Gholson sold the Amsden property for $116,006.00. Additionally, during the time decedent was incompetent and before her death, Gholson exercised her authority as "guardian" of her mother's estate to invest her mother's money, collect her social security payments, collect the royalties under the oil and gas leases, collect on grazing leases, acquire certificates of deposit with her mother's money, sell personal property owned by her mother, employ attorneys on her mother's behalf, employ persons to prepare income tax returns for her mother and submit the returns, and enter into oil, gas and grazing leases for the Archer property on her mother's behalf.

Petitioners argued below, as they do now on appeal, that Thomas Gardner, at all times, vehemently opposed Gholson's deci-sion to sell the Amsden property and never agreed to the sale. He died on January 26, 1983. At no time were petitioners or Sandra Gardner, their mother, asked if they would waive their rights under the will, nor did they agree to do so.

On April 20, 1989, Gholson filed an Application For Informal Probate of Will and For Informal Appointment of Personal Representative with the district court. In that application, Gholson stated that petitioners were heirs and devisees of the decedent and included their addresses. The petition was granted on May 1, 1989. On May 9, 1989, Gholson filed a Notice of Informal Appointment of Personal Representative, which stated that "[t]his notice is being sent to those heirs and devisees who have or may have had some interest in the estate of the decedent who died intestate." This notice was not sent to petitioners until June 26, 1989.

When Sandra Gardner and Dave Gardner attended decedent's funeral, Gholson told them that petitioners were not named in the will and that, because Thomas Gardner was dead, his share went to his half-sisters. Gholson also told Sandra Gardner and Dave Gardner that the half-sisters would give petitioners $30,000.00 because petitioners were left out of the will. On May 24, 1989, in a telephone conversation, Gholson asked Sandra Gardner if she had received a copy of the will. When Sandra Gardner told her she had not, Gholson said that a copy would be sent. Gholson also told Sandra Gardner that Paula Westbrook did not want to give $10,000.00 to petitioners because she needed new dentures. Therefore, petitioners would receive only a $20,000.00 gift rather than the $30,000.00 earlier promised. Gholson did not correct these statements at any time.

On June 26, 1989, Gholson and Avon Magee, signing as "custodians for Elizabeth Gardner," distributed $130,004.04 of estate funds. Paula Westbrook received $43,286.04; Sandra, $20,000.00; Avon Magee, $33,359.00; and Gholson, $33,359.00. Gholson did not apply to the district court

or receive approval from the court to distribute the cash in this manner. That same day, Gholson told Sandra Gardner that the $20,000.00 check gifted to petitioners would be mailed that day. She also asked Sandra Gardner if she had received a copy of the will and, upon learning that Sandra Gardner had not, told her again that a copy would be sent. Sandra Gardner distributed the $20,000.00 in equal shares to petitioners. On July 17, 1989, Gholson filed in the district court an inventory and appraisal that did not include the Archer property or its grazing leases and that stated that decedent had $129,221.07 in cash at her death.

When petitioners received the Notice of Informal Appointment of Personal Representative, which stated they might have some interest in decedent's "intestate" estate, they were confused and curious because they had been told they were not mentioned in the will. Because of her suspicions, Sandra Gardner obtained a copy of the will from the court. Petitioners filed their claims on July 31, 1989. Gholson disallowed the claims on August 4, 1989, on the basis that they were not timely under Section 45–3–806.

On October 3, 1989, petitioners filed petitions for allowance of their claim and for Gholson's removal as the personal representative. In the petition to remove Gholson as personal representative, petitioners requested that she be held liable for damage or loss to the estate pursuant to Section 45–3–712. Gholson moved to enforce disallowance of the claims. In an affidavit attached to the motion, she erroneously reported the estate's income. The royalties reported for each year were too low, the grazing lease income was not included, and the net sales price for the Amsden property and other real estate sold was not reported.

In opening argument at the district court hearing, petitioners' counsel requested the right to recover reasonable attorney fees. Gholson's counsel waived opening argument, did not object to attorney fees being at issue, and did not object to the evidence underlying the right to receive attorney fees. On July 16, 1990, petitioners' counsel submitted an affidavit of attorney fees.

On July 19, 1990, the district court ordered Paula Westbrook, Avon Magee, and Gholson to return to Gholson, as personal representative, the amounts disbursed from the estate with interest and, if they should fail to return the monies by August 15, 1990, Gholson was individually liable. The court further ordered Gholson to distribute $32,002.00 from the estate to each plaintiff by September 15, 1990. Gholson was also ordered to account to the court for the estate's cash assets and to pay her own attorney fees. The court also ordered that petitioners were entitled to their reasonable attorney fees. On July 30, 1990, that portion of the judgment granting specific attorney fees was held in abeyance until Gholson's objection to the proposed judgment could be heard.

Gholson submitted an accounting to the district court on September 13, 1990. The accounting stated that $110,099.67 had been returned to her as personal representative in accordance with the court's order. Interest of $98.63 was reported. Gholson's amended accounting, filed November 1, 1990, reported $6,872.87 in interest. Gholson did not distribute any money to petitioners.

On October 9, 1990, the district court ordered the estate to pay petitioners' reasonable attorney fees of $21,056.00 and costs of $3,144.00. If the estate had insufficient funds to pay these amounts, Gholson was ordered to pay individually. The court also signed a writ of execution for $120,206.00 plus 15% interest from September 15, 1990, on petitioners' behalf against the account held in the name of the estate at the bank Gholson named as holding the estate account. When the writ was executed, only $4,232.72 was in the account. The bank informed the sheriff that no amount close to $120,206.00 had ever been deposited recently in the account.

Based on certain findings, the district court made the following pertinent conclu-

sions of law that are challenged by Gholson: that (1) under decedent's will, petitioners inherited the Amsden property in equal parts because Thomas Gardner predeceased decedent; (2) because the Amsden property had been sold by Gholson, under Section 45–2–608(B) petitioners were entitled to a general pecuniary devise equal to the net sales price of the property; (3) Gholson acted as a conservator when she sold the Amsden property; (4) petitioners timely filed their claims; (5) the estate was improperly distributed on June 26, 1989; (6) Gholson intentionally misrepresented the estate to Sandra Gardner and petitioners; (7) Gholson breached her fiduciary duty to the estate and to petitioners and thereby injured petitioners; and (8) Gholson used fraud to avoid the provisions and purposes of the Probate Code and thereby injured petitioners. She also challenges the district court's order awarding petitioners their attorney fees and, if the estate was unable to pay, holding Gholson personally liable, as well as the district court's denial of her attorney fees.

## DISCUSSION

### I. Petitioners' Claims Were Timely Filed.

■ Gholson argues that the district court lacked jurisdiction to entertain petitioners' claims because the claims were untimely filed and thus the entire proceedings were void. To support this proposition, she relies on Section 45–3–803(B)(2), which requires that creditors' claims against the estate be filed within four months of the decedent's death. Alternatively, Gholson points to Section 45–3–806, which requires creditors whose claims have been disallowed to file petitions for allowance within sixty days after the mailing of notice of disallowance. We believe that neither statute contains the relevant limitations provision because petitioners were not creditors, but devisees, of the estate.

A "devisee" is defined under the Probate Code as "any person designated in a will to receive a devise." § 45–1–201(A)(7). It is undisputed that petitioners were devisees under the will. The applicable statute of limitations is thus found in Section 45–3–1006, which provides that a devisee has one year from the time of distribution of the estate to dispute the distribution of assets. Thus, petitioners had one year from June 13, 1989, to file their claims. Alternatively, because the district court found that Gholson used fraud to circumvent the provisions of the Probate Code, petitioners had two years from the date they discovered the fraud in which to institute an action based on fraud. See § 45–1–106(A). Petitioners received a copy of the will on July 18, 1989. Under either statute of limitations, we conclude petitioners' claims were timely filed on July 31, 1989.

### II. Gholson Was A Conservator.

■ The district court concluded that, when Gholson sold the Amsden property, she acted as a conservator and therefore, pursuant to Section 45–2–608(B), petitioners were entitled to receive a general pecuniary devise equal to the net sale price of the Amsden property. Section 45–2–608(B) states that "[i]f specifically devised property is sold by a conservator, * * * the specific devisee has the right to a general pecuniary devise equal to the net sale price * * *." Gholson concedes that under Section 45–2–608(B), if specifically devised property is sold by a conservator, the specific devisee has a right to a general pecuniary devise equal to the net sales price. However, relying on In re Will of Graef, 81 N.M. 266, 466 P.2d 112 (1970), Gholson argues that the statute must be interpreted literally and, since the statute uses the word "conservator," it does not apply to "guardians." Because the order granting her authority to manage her mother's estate used the term "guardian," she claims she could not be considered a conservator, but only a guardian, and thus the district court's conclusion (that she was a conservator) was erroneous. She also claims that, if the district court had intended to make her a conservator, it would have done so. In so arguing, we believe Gholson is placing undue emphasis on form over substance.

Based on the premise that she cannot be considered a conservator, Gholson contends that "[t]here is no indication what results if there is a sale by a guardian with specific power to sell property." Therefore, she argues, the disposition of the property depends on common law. Relying on *Maestas v. Martinez*, 107 N.M. 91, 752 P.2d 1107 (Ct.App.1988), she claims that New Mexico recognizes ademption by extinction and therefore petitioners' devise should be considered adeemed. *Maestas*, however, actually rejected an argument that the doctrine of ademption by extinction should be applied to devisees of land. *Id.* at 95, 752 P.2d at 1111. Thus, even if we were to accept Gholson's argument that ademption by extinction was recognized in New Mexico, *Maestas* compels the conclusion that the doctrine does not apply to the facts of this appeal, which involve a devise of real property. Additionally, New Mexico's adoption of the uniform probate code indicates the legislature wanted a statute similar to those of sister jurisdictions rather than to our prior case law on ademption. *See Owen v. Wilson*, 399 So.2d 498, 500 (Fla. Dist.Ct.App.1981).

For the first time, Gholson argues that, even if ademption by extinction is inapplicable to the facts of this appeal, claimants are entitled only to a proportionate share of the estate or to the unspent proceeds of the sale. Arguments raised for the first time on appeal will not be considered. *Woods v. Collins*, 87 N.M. 370, 371, 533 P.2d 759, 760 (Ct.App.), *cert. denied*, 87 N.M. 369, 533 P.2d 758 (1975).

We need not consider whether ademption by extinction is recognized in New Mexico because we conclude that, despite the use of the word "guardian" in the court order appointing Gholson as caretaker of her mother's estate, Gholson indeed acted as a conservator when she sold the Amsden property.

■ We agree that, when a provision of the Probate Code is unambiguous, it must be interpreted literally. *Graef*, 81 N.M. at 266–67, 466 P.2d at 112–13. However, Gholson does not ask this court to interpret the relevant statute literally, nor does she argue that Section 45–2–608(B) is ambiguous. Rather, she asks us to interpret the district court's order naming her "guardian" literally. To accept this argument would be to ignore her actual role. A guardian has only care, custody, or control of the person. § 45–1–201(A)(15); *see also* Richard W. Effland, *Caring for the Elderly Under the Uniform Probate Code*, 17 Ariz.L.Rev. 373, 377 (1975). A guardian is not authorized to sell property, enter into leases, or employ accountants and attorneys. *See* § 45–5–312 (discussing powers of guardian). A conservator, on the other hand, is defined as "a person who is appointed by a court to manage the property or financial affairs or both of an incapacitated person or minor ward." § 45–1–201(A)(5). A conservator is authorized to generally manage all aspects of the incapacitated person's estate, including operating any business, investing funds, buying and selling property, and employing accountants and attorneys. § 45–5–424.

■ Gholson does not challenge the district court's findings that she was named "guardian" of her mother's estate after her mother was adjudicated incompetent, that she was granted the authority to manage her mother's property and finances, and that in fact she did so by taking such actions as selling property, filing tax returns, collecting royalties and rental income, and entering into mineral and grazing leases on her mother's behalf. Thus, we conclude that, although the term "guardian" was used, Gholson actually acted as conservator of her mother's estate while her mother was incapacitated. To conclude otherwise would be to ignore the substance of what in fact occurred.

We hold that Gholson was a conservator within the meaning of Section 45–1–201(A)(5). We thus conclude that the district court did not err in determining that Section 45–2–608 was applicable to the facts of this appeal and that petitioners

were therefore entitled to the net sale price of the Amsden property.

### III. Substantial Evidence Supported The District Court's Findings And Conclusions.

■ In shotgun fashion, Gholson challenges eighteen of the district court's findings of fact and fifteen of its conclusions of law as not being supported by substantial evidence. However, she specifically addresses only two of the findings, Finding "22" (which is actually 21) and Finding 37. Although she states that "Findings 4 through 50 and Conclusions 3 through 17 lack evidentiary support in the record," she fails to discuss all the evidence concerning these findings and conclusions or to point specifically to errors in them. Such a generalized attack is insufficient to meet the requirements of SCRA 1986, 12–213 (Repl.1992). *Sun Vineyards, Inc. v. Luna County Wine Dev. Corp.*, 107 N.M. 524, 527–28, 760 P.2d 1290, 1293–94 (1988). Consequently, we hold she has waived her objections to all but those two and the district court's other findings are the facts before this court. R. 12–213(A); *Perez v. Gallegos*, 87 N.M. 161, 530 P.2d 1155 (1974).

1. *Substantial evidence supports the district court's findings that Gholson breached her fiduciary duty.*

Gholson argues that the evidence does not support the district court's ruling that she breached her fiduciary duty. She specifically attacks only the finding that she repeatedly misrepresented the terms of the will and the facts concerning its probate. The evidence that Gholson contends controverts this finding is that Gholson called Sandra Gardner to tell her of decedent's death and to get petitioners' addresses, and relied on her counsel to keep Sandra Gardner and petitioners informed. Additionally, Gholson asserts that the use of the word "intestate" in the notice of informal appointment of personal representative was "obviously" a typographical error and "an

error by counsel." She cites *In re Will of Hamilton*, 97 N.M. 111, 637 P.2d 542 (1981), to support her argument that the evidence is insufficient. *In re Hamilton* held that the executor was required to reimburse the estate for a vehicle he improperly purchased with estate funds. *Id.* at 115, 637 P.2d at 546. The court also held that it was improper for the executor to disburse funds from the estate to himself without filing claims. *Id.* at 114–15, 637 P.2d at 545–46. Contrary to Gholson's apparent assertion, *In re Hamilton* did not hold that only these acts by an executor would be improper. Additionally, "the Code concept that the conservator is a trustee of the estate enhances the fiduciary nature of the role." Effland, 17 Ariz. L.Rev. at 387; *see also Beck v. Beck*, 383 So.2d 268, 271 (Fla.Dist.Ct.App.1980) (guardian of property under uniform probate code required to exert same standard of care as trustee).

■ Gholson additionally argues that her denial of petitioners' claims as untimely cannot be considered a breach of fiduciary duty because she relied on the advice of counsel. However, she cites no authority for this proposition. Arguments not supported by cited authority will not be reviewed on appeal. R. 12–213(A)(3) (contentions must be supported by citation to authority); *see also In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

■ Gholson essentially suggests that we reweigh the evidence. "Appellate courts do not weigh conflicting evidence." *Mountain States Constr. Co. v. Aragon*, 98 N.M. 194, 195, 647 P.2d 396, 397 (1982). Rather, we view the evidence in the light most favorable to support the district court's findings and conclusions, and reverse only if the findings and conclusions cannot be supported by the evidence or reasonable inferences. *Id.* This court reviews findings underlying equitable issues such as breach of fiduciary duty for abuse of discretion. *See Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 118, 679 P.2d 258,

260 (1984). Abuse of discretion is found only where the district court's decision is contrary to logic and reason. *Roselli v. Rio Communities Serv. Station,* 109 N.M. 509, 512, 787 P.2d 428, 431 (1990).

■ Our review of the record shows that the district court did not abuse its discretion in Finding 21. Both Sandra Gardner and Dave Gardner testified that Gholson told them that petitioners were not named in the will; that their father's share went to his half-sisters; and that she and her sisters would give petitioners $30,-000.00 because they felt badly about petitioners being left out of the will. The only evidence controverting this testimony was Gholson's general statement that "Oh, I don't recall all she [Sandra] said. There were some others [of Sandra's statements], I felt like were not true."

Gholson testified that she knew by April 20, 1989, that petitioners were potential devisees. In fact, petitioners were named in the will. However, despite speaking with Sandra Gardner after April 20, Gholson did not correct her misstatements and continued to discuss the "gift" to the children. She also distributed the estate before petitioners received notice of their potential interest in the estate and continuously failed to send a copy of the will to petitioners.

The evidence supports the district court's findings and conclusions that Gholson breached her fiduciary duty. As a trier of fact, the district court was free to find a breach of such duty based on the following factors:

(a) As personal representative, Gholson had a duty to distribute the estate in accordance with the will and New Mexico law "consistent with the best interests of the estate" and "for the best interests of successors to the estate." § 45-3-703(A). She had a duty to take all steps reasonably necessary to protect and preserve the estate. § 45-3-709. She had a duty to be impartial among the beneficiaries. *Estate of Baldwin,* 442 A.2d 529, 532 (Me.1982);

*cf. In re Estate of Lopez,* 106 N.M. 157, 161, 740 P.2d 707, 711 (Ct.App.1987) (trial court directed to make findings on whether personal representative had a right to possess property and oust cotenant). She was to give notice to all heirs and devisees under the will no later than ten days after her appointment as personal representative. § 45-3-705. She was to file an inventory and appraisal of the estate within three months of her appointment listing with reasonable detail the property and its value. § 45-3-706. A trier of fact could determine that she breached all of these duties.

(b) Gholson failed to distribute the estate in accordance with either the will or New Mexico law. Although decedent intended petitioners to have the Amsden property if their father predeceased her, and Gholson knew this fact, she misrepresented the terms of the will to Sandra Gardner and petitioners. She also promised to send petitioners a copy of the will but failed to do so, thus preventing petitioners from learning of their interest under the will. Additionally, Gholson filed pleadings in probate and distributed the estate in a manner that, if the probate had not been contested, it would have appeared that petitioners had notice and had received their "intestate" share of the estate assets listed on the July inventory, which also omitted the Archer property.

(c) Gholson breached her duty to preserve the estate by wrongfully distributing the assets. The district court ordered Gholson and her sisters to return $110,-004.04 in estate funds, plus interest, to the estate. Apparently, only $4,232.72 was returned; the rest is unaccounted for.

(d) Gholson breached her duty to give notice to petitioners. Gholson was appointed on May 1, 1989, and filed the Notice of Informal Appointment on May 9, 1989, but did not mail the notice to the Gardners until June 26, 1989, after the estate had been distributed. Gholson failed to report all the estate assets as required by Section 45-3-706. The appraisal and inventory in-

cluded the estate funds but did not include the Archer property. This is significant because, if petitioners were denied their inheritance under Section 45-2-608, they were entitled to one-fourth of the Archer property and one-fourth of the cash under Section 45-2-302.

We thus conclude that the evidence was sufficient to support the district court's findings that Gholson misrepresented the terms of the will and the probate situation to petitioners and that she breached her fiduciary duty to petitioners and the estate.

2. *Clear and convincing evidence supports the district court's findings that Gholson committed fraud.*

■ Gholson challenges the district court's finding that she committed fraud. Initially, she alleges that, under SCRA 1986, 1-009(B) (Repl.1992) and *Delgado v. Costello*, 91 N.M. 732, 734, 580 P.2d 500, 502 (Ct.App.1978), claimants were required to plead the circumstances constituting fraud with particularity, and they failed to do so. However, we conclude that Gholson impliedly consented to the issue of fraud being tried. In opening argument, petitioners' counsel stated petitioners were requesting attorneys fees under Section 45-1-106 that were incurred as a result of Gholson's fraud. The evidence for finding fraud was summarized during petitioners' opening argument. Gholson's counsel did not object to the evidence of misrepresentation, knowledge, or reliance on the misrepresentations. SCRA 1986, 1-015(B) (Repl.1992) states that, when issues not raised in the pleadings are tried by express or implied consent, they are treated as if they had been raised in the pleadings. *See Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 794 P.2d 349 (1990). We conclude that the issue of fraud was tried by implied consent.

■ The elements of fraud are a false representation, knowingly or recklessly made with the intent to deceive, for the purpose of inducing the other party to act

and on which the other party relies to his or her detriment. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 14, 820 P.2d 1323, 1328 (1991). Gholson fails to attack specifically the district court's findings relevant to its conclusion that Gholson committed fraud other than Finding 21, which we have already held was supported by substantial evidence. Although each element of fraud must be shown by clear and convincing evidence, this court resolves conflicting evidence in favor of supporting the district court's finding and conclusions. *Id.* When the standard is proof by clear and convincing evidence, the question for the district court is whether there is sufficient evidence to reach an "abiding conviction" as to the truth of the petitioners' claim. *In re Estate of Foster*, 102 N.M. 707, 711, 699 P.2d 638, 642 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985).

■ The district court found that Gholson repeatedly misrepresented the terms of the will and the probate to Sandra Gardner and Dave Gardner and that they relied on those misstatements to their detriment. Additionally, although Gholson repeatedly promised to send a copy of the will, she never did so, and she did not send petitioners the notice of probate until after the estate had been distributed. As a result, petitioners did not read the will until after the estate's assets had been wrongfully distributed. The district court found that Gholson had misrepresented the estate's assets to the court by failing to include the Archer property inherited by her and her sisters or its associated grazing lease. The findings indicate that Gholson misrepresented to the court the income from the estate during the time she was "guardian" by misstating the amount of royalties, not including the sales price for the Amsden property, and not reporting the grazing lease income. These findings support the district court's conclusion that Gholson committed fraud.

3. *Petitioners are not estopped from asserting their rights.*

Gholson claims that the evidence shows that Thomas Gardner acquiesced to the

sale of the Amsden property. She points only to evidence that, although Thomas Gardner initially objected to the sale, "after counsel to the guardian wrote a letter to him, he no longer voiced opposition." As a result, she concludes, claimants are estopped from asserting their claim. Gholson cites *Reinhart v. Rauscher Pierce Securities Corp.*, 83 N.M. 194, 490 P.2d 240 (Ct.App.1971), and *In re Estate of Salas*, 105 N.M. 472, 734 P.2d 250 (Ct.App.1987), to support this proposition.

■ " 'Estoppel' is the preclusion by reason of the acts or conduct of a party, from asserting a right which might otherwise have existed, to the detriment or prejudice of another, who has acted thereon in reliance on such acts and conduct." *Salas*, 105 N.M. at 475, 734 P.2d at 253 (citing *Reinhart*). Gholson does not allege any acts by petitioners on which Gholson relied to her detriment.

■ Additionally, even if Thomas Gardner had acquiesced to Gholson's sale of the Amsden property, his acquiescence would be insufficient to waive petitioners' rights under the will. Section 45–1–103 provides that common law applies only if not "specifically displaced by particular provisions of the [Probate Code]." *See also Foster*, 102 N.M. at 714, 699 P.2d at 645. The Probate Code specifically provides that "competent successors may agree among themselves to alter the interests, shares or amounts to which they are entitled under the will of the decedent ... *in a written contract* executed by all who are affected by its provisions." § 45–3–912 (emphasis added); *see also Swan v. Swan*, 308 Minn. 466, 241 N.W.2d 817, 818 (1976) (agreement under Section 3–912 of the uniform probate code must contain the elements of a valid contract). No written contract executed by decedent's successors was entered into evidence. We thus conclude that the district court's finding that Thomas Gardner did not agree to the sale is supported by substantial evidence.

4. *Substantial evidence supports the district court's finding that Gholson should be personally liable.*

Gholson argues that no evidence supports holding her personally liable because

(1) the requirements of Section 45–3–808 were not met since no proceeding for an accounting was held in this case and (2) the district court may not grant relief that was not requested by the pleadings nor necessary within the claimants' theories. As a result, Gholson claims that the district court lacked jurisdiction to award judgment against the personal representative as an individual.

■ Section 45–3–808 does not support Gholson's argument. Gholson apparently relies on Subsection D, which provides that "[i]ssues of liability as between the estate and the personal representative individually *may* be determined in a proceeding for [an] accounting...." § 45–3–808(D) (emphasis added). This statute does not require that a proceeding for an accounting is *required* for the personal representative to be held personally liable. On the contrary, the statute states that a personal representative will be individually liable for torts committed in the administration of the estate if the personal representative is personally at fault. § 45–3–808(B). A personal representative may be held personally at fault when she uses the property or assets of the estate for her own benefit. *Hamilton*, 97 N.M. at 114–15, 637 P.2d at 545–46.

■ Gholson's assertion that petitioners did not request that she be held personally liable is incorrect. In their October 3, 1989, petition, they requested that the district court hold Gholson liable for any damage or loss caused by her administration of the estate pursuant to Section 45–3–712. That statute provides that "[i]f the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty." As we noted previously, the district court's findings and conclusions that Gholson breached her fiduciary duty are fully supported by the evidence. Thus, under Section 45–3–712, Gholson could be held personally liable for any loss to the estate.

*See Fry & Co. v. District Court in and for Adams County*, 653 P.2d 1135, 1137 (Colo. 1982) (en banc). We thus conclude that the district court had jurisdiction to hold Gholson personally liable for the loss to the estate. *In re Estate of Ridl*, 455 N.W.2d 188, 192 (N.D.1990).

### IV. The District Court Did Not Abuse Its Discretion In The Award Of Attorney Fees.

Gholson raises several claims in her attack on the district court's award of attorney fees to petitioners and denial of fees to her. She does not dispute the award of costs.

Gholson concedes that the district court may award attorney fees when a successful contest benefits the entire estate. *See Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68 (1963). However, Gholson claims that the district court's Finding 37 that, by bringing the claims, petitioners enforced the will is "not complete" because the will was not enforced with respect to a second property that Gholson sold before her mother's death. Additionally, she relies on *Gregg* to argue that petitioners brought the action to benefit themselves as individuals and not to benefit the estate. Finally, she claims that the amount of attorney fees awarded is not supported by the record.

Gholson's claim that Finding 37 is incomplete and that the district court should have considered the second property was not raised below. Thus, we will not consider it. *Villella Enters., Inc. v. Young*, 108 N.M. 33, 34, 766 P.2d 293, 294 (1988).

■ This court reviews the award of attorney fees for an abuse of discretion. *Keeth Gas Co. v. Jackson Creek Cattle Co.*, 91 N.M. 87, 91, 570 P.2d 918, 922 (1977); *Pacheco v. Alamo Sheet Metal Works, Inc.*, 91 N.M. 730, 732, 580 P.2d 498, 500 (Ct.App.1978). In will disputes, attorney fees may be awarded for services rendered that benefit the entire estate. *Foster*, 102 N.M. at 714, 699 P.2d at 645. A benefit to the estate occurs when the

action prevents or corrects an unlawful distribution of the estate. *Id.* at 714–15, 699 P.2d at 645–46. The district court's findings support the conclusion that Gholson distributed the estate contrary to decedent's wishes and tried to conceal this fact from petitioners and the court. *Cf. In re Estate of Hilton*, 98 N.M. 420, 427, 649 P.2d 488, 495 (Ct.App.) (sufficient evidence of decedent's intent in will alone); *cert. denied*, 98 N.M. 478, 649 P.2d 1391 (1982). These actions could be deemed an unlawful distribution under Section 45–2–608(B) and Section 45–2–302. *See also Foster*, 102 N.M. at 715, 699 P.2d at 646.

■ Gholson has not persuaded us that the district court abused its discretion in the amount of fees awarded. Petitioners' expert witness testified that all but $1,500.00 of petitioners' requested fees were reasonable. No other evidence concerning the reasonableness of the fees was presented. The district court considered the expert witness's testimony and thus awarded petitioners $1,500.00 less than they requested. We thus conclude the evidence supported the award of fees. Additionally, the district court had jurisdiction to award fees for the time while Gholson's first appeal was pending and before it was dismissed. *See Foster*, 102 N.M. at 711–13, 699 P.2d at 642–44.

Gholson argues that she was entitled to an award of attorney fees. Without citation to the record or to authority, Gholson claims that she "only incidentally defended her personal interests when she defended the will" and that she "had a clear obligation to defend" the residuary legatees. She also asserts that "[a]s long as there is a good faith attempt by the personal representative to defend a will, whether successful or not, attorney's fees will be allowed [to the personal representative]." Arguments made without citation to authority will not be considered on appeal. *In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330. Besides, as the commentary to Section 3–720 of the uniform probate code states, "Litigation prosecuted by a personal

representative for the primary purpose of enhancing his prospects for compensation would not be in good faith." 8 Uniform Laws Ann. § 3–720, p. 343 (1983); *see also In re Estate of Odineal,* 220 Neb. 168, 368 N.W.2d 800, 804 (1985). We hold that the district court did not abuse its discretion in awarding attorney fees to petitioners and in denying them to Gholson.

CONCLUSION

Because we hold that Gholson was a conservator when she sold the Amsden property, we conclude that the district court correctly determined that Section 45–2–608 applied to the facts of this appeal. We also hold that petitioners' claims were timely filed, that the district court's findings and conclusions of breach of fiduciary duty are supported by substantial evidence, that the district court's findings regarding fraud are supported by clear and convincing evidence, and that the district court did not abuse its discretion in the award of attorney fees. We thus affirm the district court's judgment.

IT IS SO ORDERED.

BLACK and FLORES, JJ., concur.