This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39426**

**MICHELLE CHAVEZ a/k/a**
**MICHELLE A. CHAVEZ,**

      Petitioner-Appellant,

v.

**MIGUEL CHAVEZ a/k/a**
**MIGUEL A. CHAVEZ, a/k/a**
**MIGUEL ARMARANTE CHAVEZ,**

      Respondent-Appellee,

**IN THE MATTER OF THE ESTATE OF**
**MIKE S. CHAVEZ, Deceased.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Court Judge**

Robert Richards
Santa Fe, NM

for Appellant

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Michelle A. Chavez (Petitioner), a former co-personal representative and heir of her father, Mike S. Chavez's (Decedent) Estate (the Estate), appeals from the district

court's orders granting her brother, Miguel Chavez's (Respondent) motion to enforce the settlement agreement (the Agreement), denying Petitioner's motion for reconsideration, and granting Respondent's request for attorney fees. On appeal Petitioner argues: (1) the Agreement is unenforceable; (2) the district court erred in finding that the Agreement did not have to meet the "fair market value" requirement for valuing assets distributed in kind; (3) the district court erred in awarding Respondent attorney fees; (4) Petitioner is entitled to compensation for her services and attorney fees; and lastly (5) that Petitioner's half-sister, Louise Chavez-Rasgado (Louise), breached her fiduciary duties as co-personal representative. Unpersuaded, we affirm.

## DISCUSSION

### I.      Enforceability of the Agreement

**{2}** Petitioner claims that the district court erred in granting Respondent's motion to enforce the Agreement because (1) there was no meeting of the minds, (2) estoppel bars enforcement of the Agreement, (3) the Agreement was unconscionable, and (4) she was fraudulently induced to sign the Agreement. We address each of Petitioner's arguments in turn, concluding the Agreement is enforceable.

### A.      Mutual Assent

**{3}** Petitioner contends that "[t]here was no meeting of the minds," when the Agreement was signed—we understand the heart of her argument to be that the Agreement lacked mutual assent. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (stating that "[o]rdinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent" (internal quotation marks and citation omitted)). Specifically, Petitioner argues that as a consequence of the misrepresentations made by both Respondent and Louise concerning the ownership of the Rosario Property (the Property), "the parties were not talking about the same property." As we understand it, Petitioner's mutual assent argument centers on the fact that she and Respondent "were talking about different origins of the same Property." Petitioner asserts that she based her decision to sign over the Property to Respondent based on her belief that the property originally belonged to her grandmother and was deeded to the Decedent by mistake. In response, Respondent argues that "[s]ubstantial evidence supports the district court's finding that a reasonable person would have understood that the [beneficiaries] all agreed that the . . . Property would go to [Respondent]," and thus Petitioner's argument must fail. We agree with Respondent.

**{4}** The district court was unpersuaded by Petitioner's argument that the Agreement lacked mutual assent, finding that it was a "valid and enforceable" contract. Consequently, the district court denied Petitioner's motion to sell the Property. The district court reaffirmed its finding that the Agreement amounted to an enforceable contract in its denial of Petitioner's motion to reconsider the motion to sell the Property. In reaffirming its decision, the district court relied on the fact that the Agreement itself

specifically noted that the parties "were conducting a negotiation on the basis that full financial investigation had not been conducted" and that Petitioner "was represented by her own counsel at the [s]ettlement [c]onference."

**{5}** It is undisputed the Petitioner and Respondent signed the Agreement at the conclusion of the mediation. A settlement agreement arising from mediation proceedings "is enforceable in the same manner as any other written contract." NMSA 1978, Section 44-7B-6(A) (2007). "Contract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803. Importantly, in order for a binding contract to exist "there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. The Gap, Inc.*, 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283. Parties mutually assent "when they have the same understanding of the contract's terms; where they attach materially different meanings to the terms, there is no meeting of the minds." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 20, 134 N.M. 630, 81 P.3d 573. "Where one party meant one thing and the other party meant another, the difference going to the essence of the supposed contract, the court will find no contract in law or equity unless the court should find that one party knew or had reason to know what the other party meant or understood." *Trujillo v. Glen Falls Ins. Co.*, 1975-NMSC-046, ¶ 10, 88 N.M. 279, 540 P.2d 209. In determining the purpose, meaning, and intent of the parties to a contract, we look to the language of the contract itself— where the language "is not ambiguous, it is conclusive." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (internal quotation marks and citation omitted).

**{6}** Petitioner's argument that the Agreement lacks mutual assent fails to address how or why the ownership history of the Property is material to the terms of the Agreement. Rather, her argument focuses solely on her purported lack of knowledge of the ownership history of the Property. The only argument that Petitioner advances is that she had "believed that Rosina [L. Quintana (Rosina),] was the owner of the [P]roperty" and because she believed that Rosina wanted the Property to go to Respondent, she "agreed to give the [P]roperty to [Respondent]." Even if we were to conclude that the Agreement misstated the history of the Property to some extent, the key, relevant facts about the Property were in the Agreement—that Decedent and Respondent were given title to the Property as tenants in common and that the Estate had a one-half interest in the Property. At the time the Agreement was signed, Petitioner was aware that the Estate had a one-half interest in the Property, yet she signed the Agreement with her attorney present—despite not having seen the deed in question. Petitioner's mutual assent argument relies solely on what her subjective, unexpressed, intentions were in signing the Agreement—that her signing was contingent on whether Rosina was, in fact, the prior owner of the Property and only intended to gift the Property to Respondent. We cannot rely on such an argument because "[m]utual assent is based on objective evidence, not the private, undisclosed thoughts of the parties." *Pope*, 1998-NMCA-103, ¶ 13.

**{7}** Our own review of the objective evidence does not show that the ownership history of the Property is an essential and material term of the Agreement. Notably, the Agreement did not condition Petitioner's decision to sign over the deed on the Estate's interest in the Property on the basis that Rosina initially owned the Property. Further, the Agreement specifically states that "[f]ull financial discovery for the Estate has not been conducted and [p]arties, pro se and [r]epresented are aware." The language in the Agreement is unambiguous. Petitioner with counsel chose not to delay signing the Agreement knowing she had not seen the deed to determine ownership. Thus, absent ambiguity, this Court's interpretation is restricted to the plain meaning of the Agreement. *See Smith v. Price's Creameries*, 1982-NMSC-102, ¶ 13, 98 N.M. 541, 650 P.2d 825 (stating that when a "contract is plain and unequivocal in its terms, each [party] is ordinarily bound thereby"). Our Supreme Court has previously held that a party "can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal or cause a change in the terms or purpose to be accomplished by the settlement." *Jones v. United Minerals Corp.*, 1979-NMSC-103, ¶ 13, 93 N.M. 706, 604 P.2d 1240. The essential terms of the Agreement were agreed upon. The purpose of the Agreement was to divide the Estate property, which was accomplished. Petitioner fails to cite any legal authority supporting the notion that the manner in which the Property was conveyed to Respondent and Decedent impacted the material terms of the Agreement; we therefore assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that "[w]e assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority"). We conclude that there was mutual assent.

## B.    Estoppel

**{8}** Next, Petitioner claims that the Agreement ought to "be set aside under principles of equitable estoppel." Petitioner argues that she "lacked both the knowledge and the means of acquiring knowledge of who owned the Property because (1) [she] did not know there was going to be a proposal to distribute the [a]ssets in kind at the mediation and (2) she was not told the Property was an [a]sset until the mediation." In response, Respondent argues that estoppel is unavailable to Petitioner because she "was aware that there was an issue with the . . . Property both before and during mediation" but failed to investigate it herself or through her counsel, prior to signing the Agreement. We agree with Respondent.

**{9}** The district court implicitly denied Petitioner's equitable estoppel claim when it ruled that the Agreement was "valid and enforceable." Specifically, the district court found that "[i]n the light of the representations that are contained in the . . . Agreement itself, the [c]ourt cannot agree that there was fraud or something else going on." "[We] review a district court's application of the doctrine of equitable estoppel for an abuse of discretion." *Little v. Baigas*, 2017-NMCA-027, ¶ 22, 390 P.3d 201. The party raising an equitable estoppel claim "has the burden of establishing all facts necessary to prove it . . . [and] must plead the circumstances giving rise to estoppel with particularity." *Id.* (internal quotation marks and citations omitted). A party raising a claim of equitable

estoppel must demonstrate that the other party "(1) concealed material facts, falsely represented material facts, or made misrepresentations of fact different or inconsistent with later assertions in court; (2) had an intent or expectation that such conduct would be acted upon by the plaintiff; and (3) possessed either actual or constructive knowledge of the real facts." *Id.* ¶ 24 (internal quotation marks and citation omitted). Additionally, Petitioner must prove that she "(1) lacked both the knowledge and the means of acquiring knowledge of the truth as to the facts in question; (2) relied on the defendant's conduct; and (3) acted upon that conduct in a way that prejudicially altered [her] position." *Id.* (internal quotation marks and citation omitted).

**{10}** Thus, in order to properly raise a claim of equitable estoppel, Petitioner was first required to demonstrate that Respondent either concealed material facts, falsely represented material facts, or made misrepresentations of fact different or inconsistent with later assertions in court in relation to the ownership history of the Property. *See id.* ¶ 22. In relation to concealment or misrepresentations of material facts, we have already determined that the ownership history of the Property was immaterial to the terms of the Agreement. Moreover, Petitioner's argument relies on blanket assertions that false misrepresentations were made to her and that Respondent and Louise "lied when they stated that Rosina was the prior owner and really wanted to give the [P]roperty to [Respondent]." Our review of the record does not reveal any evidence to support Petitioner's claims that Respondent made or contributed to any concealment or misrepresentations of material facts. Rather, our review reveals that the only people who made a statement during the mediation, and any other time, concerning Rosina's relationship to the Property were the mediator and Rosina herself via a phone call with the mediator. Because Petitioner fails to identify conduct by the Respondent demonstrating that he concealed material facts, made false representations of material facts, or made misrepresentations of fact different or inconsistent with later assertions in court—she has failed to establish the required elements of an equitable estoppel claim. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (stating that "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence"). As such, we conclude that the district court did not abuse its discretion to the extent that it denied Petitioner's equitable estoppel claim because Petitioner failed to prove that material facts were concealed or falsely misrepresented.

## C.    Unconscionability

**{11}** Next, Petitioner argues that the Agreement was both substantively and procedurally unconscionable. "[W]e review whether a contract is unconscionable as a matter of law." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Id.* ¶ 21.

**{12}** Petitioner provides no legal argument addressing her substantive unconscionability claim. Rather, in support of her claim she simply alleges that the

Agreement distributed 77 percent of the assets to one heir. To the extent that she addresses procedural unconscionability, her argument, again, hinges on unsupported factual allegations that Respondent and Louise knew about the trustee's deed, that the mediator pressured her to settle, and had she not been so pressured she would have "never . . . agreed to settle and would have walked away." *See Muse*, 2009-NMCA-003, ¶ 72 (stating that "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments"). Because this argument is not adequately developed, we decline to address it further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 (stating that "[t]his Court has no duty to review an argument that is not adequately developed").

## D.     Fraud

{13}     Lastly, Petitioner argues that she was fraudulently induced to sign the Agreement. Petitioner asserts that Respondent and Louise "deliberately refused to tell [Petitioner], until the mediation, that the Property was an [a]sset and lied when they stated that Rosina was the prior owner and really wanted to give the Property to [Respondent]." In response, Respondent argues that Petitioner "did not meet her burden to provide clear and convincing evidence of fraud." According to Respondent, Petitioner failed to establish that he or anyone else made a false misrepresentation or omission. We agree with Respondent.

{14}     The district court found that there was no fraud, stating that "the [c]ourt cannot agree that there was fraud or something else going on." It is important to note that the district court also found that it was Petitioner that "had the heightened fiduciary duty to other heirs to ensure the accuracy of her understanding." In fact, it was Petitioner who assumed the role of creating the inventory of assets. Moreover, the district court found that it was within Petitioner's "authority and control to pursue diligent inquiry and research into the [E]state assets and their value before negotiating the . . . Agreement . . . and the . . . Agreement specifically states that such an inquiry had not been done."

{15}     "The elements of fraud are a false representation, knowingly or recklessly made with the intent to deceive, for the purpose of inducing the other party to act and on which the other party relies to [their] detriment." *In re Estate of Gardner*, 1992-NMCA-122, ¶ 35, 114 N.M. 793, 845 P.2d 1247. "Although each element of fraud must be shown by clear and convincing evidence, this [C]ourt resolves conflicting evidence in favor of supporting the district court's finding[s] and conclusions." *Id.*

{16}     Petitioner fails to direct this Court to any evidence in the record that establishes that there was either a fraudulent misrepresentation or omission. Again, Petitioner merely alleges that she was lied to and "there were false representations and that [Petitioner] relied on them." To the extent that Petitioner asserts that Respondent knew that the Property was not previously owned by Rosina and withheld that information, we resolve any conflicting evidence in favor of the district court's findings and conclusions that there was no fraud. *See id.* Moreover, Petitioner fails to address all of the elements of fraud. For these reasons, we affirm the finding of the district court that there was no

fraud. *See Muse*, 2009-NMCA-003, ¶ 72 (stating that "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments").

## II.    Distribution in Kind

**{17}**    Next, Petitioner contends that the district court erred in its finding that under NMSA 1978, Section 45-3-912 (2016), the Agreement did not have to meet the "fair market value" requirement for valuing assets distributed in kind as is required by NMSA 1978, Section 45-3-906(A) (1993). According to Petitioner, "[t]here is no dispute that the [A]greement distributed the [a]ssets in kind and according to their tax value, not the fair market value." Consequently, Petitioner argues, the beneficiaries believed they were giving up one-fourth of a one-half interest in the Property, when they were really giving up "over four times that amount, or about $60,000." Respondent asserts that "[b]y its own terms, [Section] 45-3-906(A) applies only to family allowances, personal property allowances, or sums of money distributed in kind—it does not apply to distributions of real property." Accordingly, Respondent argues Section 45-3-912 governs the Agreement and it permits "[h]eirs to alter the amounts they receive 'in any way,' including by considering the tax value."

**{18}**    The district court rejected Petitioner's argument that Section 45-3-906 "applies to the implementation and construction of the . . . Agreement." Rather, it found that Section 45-3-912 is the relevant applicable statutory section. Our review of the applicable statutes is de novo. *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. However, Petitioner does not develop an argument to address how Section 45-3-906 applies to the specific circumstances of this case—rather she simply alleges, without any legal support or citations to the record that "[t]here is no dispute that the [A]greement distributed the [a]ssets in kind." Because Petitioner's argument that Section 45-3-906 governs the Agreement is undeveloped and not supported by authority, we decline to address it further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining this Court does not review undeveloped arguments).

## III.    Respondent's Award of Attorney Fees

**{19}**    Petitioner argues that the district court erred in awarding attorney fees to Respondent on the basis of Petitioner's bad faith because she was precluded from taking any action as co-personal representative after Louise filed the motion to remove. Specifically, Petitioner claims that the "[district court] abused its discretion because [she] did not have any duty to have done such diligent inquiry and research into the assets and their value and the manner in which they were titled before negotiating the . . . [A]greement."

**{20}**    The district court based Respondent's award of attorney fees and costs on Petitioner's "lack of good faith and lack of merit in her challenge to the . . . Agreement." An award of attorney fees is reviewed for abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450. The

proper inquiry "is not what we would have done had we heard the fee request, but whether the [district] court's decision was clearly against the logic and effect of the facts and circumstances before the court." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 N.M. 879, 149 P.3d 976 (internal quotation marks and citation omitted). "However, our review of legal questions and whether the law has been correctly applied is de novo." *Guest v. Allstate Ins. Co.*, ___-NMCA-___, ¶ 26, ___ P.3d ___ (A-1-CA-38700, June 12, 2023).

**{21}** The district court had the authority to award attorney fees under the "bad-faith exception to the American Rule under which parties typically pay their own fees." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 12, 134 N.M. 394, 77 P.3d 298. Pursuant to this exception, "a court may award attorney fees to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Id.* (internal quotation marks and citation omitted). Given Petitioner's repeated failure to develop legal arguments and point to evidence in the record to support her claims of fraud, estoppel, and unconscionability, we cannot say that the district court abused its discretion in granting Respondent's request for attorney fees based on Petitioner's bad faith in challenging the Agreement.

## IV.     Petitioner's Request for Compensation and Attorney Fees

**{22}** On appeal, Petitioner argues that, as personal representative, she is entitled to (1) reasonable compensation for her services, pursuant to NMSA 1978, Section 45-3-719 (1995), and (2) reasonable attorney fees "in any defense of prosecution done in good faith, whether successful or not," pursuant to NMSA 1978, Section 45-3-720 (1995). Petitioner fails to provide a standard of review for these claims on appeal and identify where the claims were preserved below. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. Our own, independent, review of the record reveals that Petitioner raised these claims for the first time in a motion to amend the district court's oral ruling granting attorney fees to Respondent. The district court denied the motion as "untimely, as it is essentially a [m]otion to [r]econsider a denial of a [m]otion to [r]econsider." Ordinarily we review a motion to reconsider for abuse of discretion. *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628.

**{23}** Petitioner has failed to point to any error in the district court's order denying her motion to amend. Beyond citing to provisions in the probate code that provide for attorney fees and compensation for personal representatives, she fails to develop a legal argument concerning her right to either attorney fees or compensation. Moreover, the little analysis she does provide has no relation to her claims for attorney fees and compensation—rather, it focuses on Petitioner's, seemingly, unrelated claim that she filed the motions challenging the Agreement in good faith. Because Petitioner fails to provide adequate explanation of her argument, we decline to address it. *See Headley*, 2005-NMCA-045, ¶ 15 (stating that "[w]e will not review unclear arguments, or guess at what [a party's] arguments might be"). We also find it important to note that the

Agreement specifically precludes Petitioner from receiving compensation for her services as a personal representative.

## V.    Fiduciary Duties

**{24}**    Lastly, Petitioner claims that Louise, a nonparty on appeal, breached her fiduciary duties as a co-personal representative of the Estate. As was the case with Petitioner's argument concerning attorney fees and compensation, Petitioner raised the breach of fiduciary duty claim, for the first time, in her motion to amend. Again, Petitioner fails to provide a standard of review for this claim. However, to the extent that the district court denied Petitioner's breach of fiduciary duty claim in the motion to amend, we review for abuse of discretion. *See Wilde*, 2010-NMCA-085, ¶ 35.

**{25}**    We are not persuaded that the district court abused its discretion in denying the motion. Petitioner does not provide any specific points of error for review—rather her argument essentially asks us to reweigh the facts. *See In re Camino Real Env't Ctr. Inc.*, 2010-NMCA-057, ¶ 23 148 N.M. 776, 242 P.3d 343 (stating that "merely identifying the existence of evidence which may have tended to support a different outcome does not demonstrate an abuse of discretion"). Petitioner's argument is based on allegations concerning Louise's knowledge about the history of the Property and her subsequent alleged failure in informing Petitioner about the existence of the trustee's deed. Accordingly, we conclude Petitioner has not shown that the district court abused its discretion. *See id.* ¶ 23 (stating that "[w]hen reasons both supporting and detracting from a decision exist, there is no abuse of discretion").

## CONCLUSION

**{26}**    For the foregoing reasons, we affirm the district court's enforcement of the Agreement.

**{27}    IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**