Unified Judicial System

 

 
 
IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF MARGARET M. MILES, A Protected Person,  [2003 SD 34]
South Dakota Supreme Court
Appeal from the Circuit Court of The Third Judicial Circuit
Clark County, South Dakota
Hon. Robert L. Timm, Judge
THOMAS J. LINNGREN of Green, Schulz, Roby, Oviatt, Cummings & Linngren Watertown, South Dakota Attorneys for appellant Koyne L. Miles.
 
PAUL I. HINDERAKER of Austin, Hinderaker, Hopper, Strait & Bratland Watertown, South Dakota Attorneys for appellee Guardian and Conservator Janine A. Cone
 
Considered on Briefs January 13, 2003
Opinion Filed 4/2/2003
#22399, 22434
GILBERTSON, Chief Justice
[Â¶1.] Koyne Miles (Koyne), trustee of the Miles Trust, appeals the circuit courtâs order which approved the guardianâs annual report and the conservatorâs annual accounting.  Koyne also appeals the circuit courtâs approval of the application of fees.  Janine Cone (Janine), guardian/conservator, appeals the circuit courtâs ruling which found that it lacked jurisdiction over Koyne as trustee of the Trust because the Trust assets are in California.  We affirm on Issues 1 through 5 and reverse on issue 6.                           
FACTS AND PROCEDURE
[Â¶2.] Margaret Miles (Mother) is an 87-year-old widow who lived in California until 1999.  She suffers from dementia, along with other health problems.  In 1970, she created the Miles Trust, reserving to herself the income and principal for her life.  Mother named herself trustee and named two of her three children, Koyne and Janine, as co-successor trustees.  When the Trust was created it contained no assets.  However, in 1998 the trust was funded with Margaretâs Merrill Lynch accounts in the amount of $119,487.96 and her California real estate, with a value of $430,000.  The Trust was also amended to name Koyne as the sole successor trustee. 
[Â¶3.] In August of 1999, while Mother was living at Hillcrest Royale, an assisted living facility in California, she contacted Janine and requested that she come to California to help with Motherâs financial affairs.  Janine lives near Willow Lake, South Dakota on farmland that Mother deeded her in 1996.  Apparently, Mother was upset after an altercation with Koyne and her other son, Willis.  When Janine arrived in California, Mother informed her that she no longer wished to live at Hillcrest.  At Janineâs suggestion, Mother agreed to take a trip with her and her granddaughter, Jani Driggs, to Janiâs home in Utah.  
[Â¶4.] The day after the three women left for Utah, Koyne filed a petition for temporary guardianship in California and insisted that Mother return to California.  Janine hired an attorney in Utah to assist in Motherâs representation.  The Utah counsel filed a petition in Utah to appoint Janine as Motherâs temporary guardian, to which Koyne filed an objection.  Additionally, Janine filed a petition in California in opposition to Koyneâs petition for guardianship and conservatorship.  Janine also filed a petition in California to be appointed Motherâs guardian and conservator. 
[Â¶5.] The Utah and California courts appointed a court investigator to interview Mother.  The court investigator found that although Mother does not have the ability to manage her financial affairs, she had the capacity to designate who she wanted to act on her behalf concerning her care and financial affairs.  Furthermore, Mother clearly expressed the intent to have Janine be in charge of her care and financial affairs.  Therefore, on September 21, 1999, the Utah Court appointed Janine as temporary guardian.  
[Â¶6.] In September of 1999, Janine brought Mother back to South Dakota with her to live with her family on the land that Mother had deeded to her in 1996.  On November 29, 1999, Janine filed a petition for guardianship in South Dakota and notified the California court.  The California court, in turn, dismissed its case and ordered Koyne to file an accounting of the temporary conservatorship with the South Dakota court.  Although Koyne filed a petition with the South Dakota court to be appointed as Motherâs temporary conservator, the court in South Dakota ultimately appointed Janine as Motherâs guardian and conservator.
[Â¶7.] Since August of 1999, Koyne has paid only $500 out of the Trust for Motherâs care.  Additionally, Janine discovered that Koyne had transferred approximately $74,000 on August 18, 1999, from Motherâs Merrill Lynch account into his personal account.  This account, including Motherâs money, was seized by a creditor.  After Janineâs South Dakota counsel wrote Koyne two letters demanding he return the funds to Motherâs Trust account and file the court-ordered conservatorship ordered by the California court, the South Dakota court entered an order authorizing Janine to bring an action in California to obtain an accounting and for the removal of Koyne as trustee.  Therefore, Janine filed a petition with the California court.  The court ordered Koyne to file an accounting of the Trust and Conservatorship.  
[Â¶8.] On March 29, 2001, Janine filed her annual accounting for the year 2000.  She included with her request a proposed budget for the year 2001.  Koyne filed a âspecial appearanceâ in South Dakota to object to the accounting.  He sought to appear in his individual capacity, and not as trustee.  Janine objected to this, however, the court denied her motion and allowed Koyne to proceed.  The trial court granted Janine the majority of the relief she had requested in the accounting and determined that the attorney fees and costs incurred by Janine were reasonable and expended for the benefit of Mother.  Specifically, the trial court approved Janineâs request for monthly compensation, medical and personal expenses for mother, and legal feels.  Because the trial court found that Mother has needs for funds beyond the income that she receives, the conservator was ordered to make a demand to Koyne, the trustee, for these amounts.  However, the trial court ruled that it lacked jurisdiction to order Koyne to make the payments from the trust assets.
[Â¶9.] Koyne appeals the trial courtâs decision, raising the following issues for our review:
1.      Whether the trial court erred when it found there was no agreement between Janine and Mother regarding the farm income.
2.      Whether the trial court erred when it found that Janine was entitled to compensation for providing care for Mother.
3.      Whether the trial court erred when it found that $1,850 per month is a reasonable amount of compensation for Motherâs care.
4.      Whether the trial court erred when it found that all the attorneysâ fees incurred by Janine through the year 2000 were reasonable and expended for the benefit of Mother.
5.      Whether the trial court properly approved a budget for medical and other personal needs for the 2001 year.
 
[Â¶10.] Janine appeals the following:
6.      Whether the trial court erred when it found it lacked jurisdiction to order Koyne to make payments from the Trust assets.
             
STANDARD OF REVIEW
[Â¶11.] âIn guardianship proceedings, the trial court's findings of fact are reviewed under the âclearly erroneousâ standard.â  Guardianship of Larson, 1998 SD 51, Â¶13, 579 NW2d 24, 27 (citing In re Guardianship of Viereck, 411 NW2d 102, 106 (SD 1987) (citing SDCL 15-6-52(a)).  According to this test, "[w]e will not overturn the trial court's findings unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake was made."  Id.  (citing Wiggins v. Shewmake, 374 NW2d 111, 114 (SD 1985)).
[Â¶12.] âA jurisdictional challenge presents a question of law subject to de novo review.â  State ex rel. Jealous of Him v. Mills, 2001 SD 65, Â¶7, 627 NW2d 790, 792 (citing Red Fox v. Hettich, 494 NW2d 638, 642 (SD 1993)). 
ANALYSIS AND DECISION
 
[Â¶13.]
 
Whether the trial court erred when it found there was no agreement between Janine and Mother regarding the farm income. 
 
[Â¶14.] The following statement was included in the accounting, which Janine submitted to the trial court:
[T]hese assets [income outside the Trust] consist of a limited amount of personal property, monthly income from a pension of $850, and social security of $226 amounting to $1,076 per month.  The conservator is supplementing this income with the net income from a farm given to Janine Cone by her mother in 1996.  During the reporting period, the farm operations resulted in a loss of $482.75.  As a result of the loss no funds were available from farm operations in the current reporting period. (emphasis added.)
 
[Â¶15.] Koyne argues that there was an agreement between Janine and Mother that Janine would give her the income from the farm that Mother had deeded to her in 1996.  Additionally, Koyne contends that Janine artificially created a loss when she created an equipment reserve fund of $5,000 on the farmâs 2000 tax return in order to assert as part of the accounting that she was unable to supplement Motherâs other income.
[Â¶16.] The trial court found that there was no agreement between Janine and Mother regarding the use of the farm income to support Mother.  After a review of the record, we find that there was testimony in the record to support this finding.  
[Â¶17.] First of all, Janine testified at trial that there was no such agreement.  Furthermore, Janine testified that she provided money to Mother when she felt she needed it.   Second, even if Janine had in past years voluntarily given Mother the income from the farming operations, there was no reserved life estate in the income from the farm.  If this had been the partiesâ intent, this would have been incorporated into the deed transferring the property to Janine and it was not.
As to the funds that were set aside to purchase farm equipment, the testimony before the trial court was that the funds were needed to maintain the land in the Conservation Reserve Program.
[Â¶18.]
Whether the trial court erred when it found that Janine was entitled to compensation for providing care for Mother. 
[Â¶19.] The trial court found that Janine, as guardian and conservator, is entitled to compensation for the care of Mother.  Moreover, the trial court found that Janine was entitled to compensation for providing personal care, room, board, utilities and transportation to Mother.  Koyne argues that the trial court erred in its determination.
[Â¶20.] South Dakota law is clear that a guardian or conservator is entitled to reasonable compensation for the care of the protected person.  Specifically, SDCL 29A-5-116 provides, in relevant part: 
Any guardian, conservator, attorney for any guardian or conservator and the attorney for the minor or person alleged to need protection, and any other individuals appointed by the court in connection with a guardianship or conservatorship proceeding, are entitled to reasonable compensation from the estate, including reimbursement for costs advanced.
 
[Â¶21.] Furthermore, SDCL 29A-5-403(8) provides for the method in which the guardian is to be compensated:
A guardian of a protected person shall file a report with the court within sixty days following the first anniversary of the appointment . . . [The] report shall briefly state. . .[t]he compensation requested and the reasonable and necessary expenses incurred by the guardian.
 
SDCL 29A-5-408 provides for a similar means by which a conservator may request compensation.  Therefore, based on the above statutes, the trial court was not clearly erroneous when if found that Janine was entitled to compensation in her care of  Mother.
[Â¶22.]
3.      Whether the trial court erred when it found that $1,850 per month is a reasonable amount of compensation for Motherâs care.                  
   
[Â¶23.]               The trial court found that $1,850 per month is a reasonable amount of compensation for Motherâs care.  Koyne argues that the trial court erred when it made this finding because such a fee is not supported by the evidence and therefore, not justifiable.  Furthermore, he argues that if Janine is compensated, then âthe result will be that those assets which Mother intended Koyne and Will to ultimately receive from her estate will bear entirely the burden of Janineâs monthly fee.â
[Â¶24.]               Janine and her family provide around the clock care for Mother.  In order to provide such care, she is fulfilling Motherâs wish to live in a home with her family.  Janine sacrifices job opportunities and personal time in order to give Mother the needed care.  Janine testified that if she was being compensated for just twelve hours per day, at $10 per hour, it would amount to $3,600 per month in care alone.  This amount does not take into account Motherâs share of the cost of the household monthly expenses, which Janine testified would be around $700 for Motherâs share of food, utilities, insurance and taxes.
[Â¶25.]               Furthermore, Janine testified during the trial that she learned through her own investigation that assisted living facilities in the area cost as low as $1,850 per month to as high as $3,000 per month, depending on the type of care needed.  Additionally, Loren Diekman, the CEO of Jenkins Living Center in Watertown, South Dakota, testified that basic care for Mother in an assisted living center would range from $1,850 to $2,100 per month.  The ratio of residents to staff at these care facilities are about six to one.
[Â¶26.]               Based on the above, there was adequate support in the record to justify the trial courtâs finding that Janine is entitled to $1,850 per month compensation for Motherâs personal care, housing, meals, utilities and transportation.  
[Â¶27.] 
Whether the trial court erred when it found that all the attorneysâ fees incurred by Janine through the year 2000 were reasonable and expended for the benefit of Mother. 
[Â¶28.]               The trial court found that all of the legal fees incurred by Janine âto establish and defend the guardianship and conservatorship proceedings in Utah, California and South Dakotaâ were a direct benefit to [Mother] and therefore, should be paid by the Trust.  These attorney fees have totaled more than $80,000.  Koyne argues that Mother was not benefited from the proceedings because he did not object to Mother moving to South Dakota, and that the majority of the proceedings were a result of Janineâs request for compensation for the care of Mother.  Additionally, he asserts that much of the legal fees incurred were unnecessary.  
[Â¶29.]               SDCL 29A-5-411(18) provides:
            A conservator, in managing the estate, shall act as a fiduciary and in the best interests of the minor or protected person and shall, in addition, have the following powers, which may be exercised without prior court authorization except as otherwise provided: To employ persons, including attorneys, accountants, investment advisors, or agents; to act upon their recommendations without independent investigation; to delegate to them any power, whether ministerial or discretionary; and to pay them reasonable compensation.
 
[Â¶30.]               We stated in Larson, 1998 SD 51, Â¶31, 579 NW2d at 29, that the rule for the allowance of attorneysâ fees is as follows:
            Attorneysâ fees necessarily incurred in the administration of [her] trust or in litigation for the benefit of the estate of [her ward] conducted in good faith and with reasonable care and prudence[.]  This rule is stated in the alternative, and should be understood as meaning that if the fees for services of an attorney employed by the [guardian] are necessarily incurred in the administration of the trust, that this is sufficient to authorize their allowance without a showing of benefit to the estate.  (additional citations omitted.)
 
[Â¶31.]               There was adequate evidence at trial to support the trial courtâs finding of facts concerning the attorneysâ fees.  The trial court had detailed affidavits before it from the Utah, California and South Dakota counsel.  Additionally, Janine testified at trial that it was necessary to file a petition for the temporary guardianship of Mother in Utah because of Koyneâs demand that Mother return to California.  The California proceedings were necessary to get Koyne terminated as temporary guardian in that state and for Jayne to be appointed as temporary guardian and conservator.  Further, Janine testified that Motherâs wishes were to live with her in South Dakota and that Janine would be in charge of her personal and financial affairs.  After a review of the record, it appears that all of the attorney fees expended in the three states were reasonable and prudent and for the benefit of Mother.  Mother is able to live with her family in a home setting with 24-hour care.  Therefore, the trial court was not clearly erroneous when it found that the attorneysâ fees were necessary and should be paid by the Trust.   
[Â¶32.]
Whether the trial court properly approved a budget for medical and other personal needs for the 2001 year. 
[Â¶33.]               The trial court approved the expenses submitted in the 2000 accounting and additionally approved expected expenses for the year 2001.  Koyne argues that the trial court erred when it did this because the clear language of SDCL 29A-5-408 provides that a conservator shall file an accounting each year and the accounting should not cover a period of more than one year.  
[Â¶34.]               SDCL 29A-5-408 provides, in relevant part:
            A conservator shall file an accounting with the court within sixty days following the first anniversary of the appointment and:
(1) At least annually thereafter;
(2) When the court orders additional accounts to be filed;
(3) When the conservator resigns or is removed; and
(4) When the conservatorship is terminated.
A conservator may elect to file a periodic accounting on a calendar-year basis.  However, in no event may such an accounting cover a period of more than one year.  A calendar-year report shall be filed with the court no later than  April fifteenth of the succeeding year.
An accounting shall include:
(1) A listing of the receipts, disbursements and distributions from the estate under the conservator's control during the period covered by the account;
(2) A listing of the estate;
(3) The services being provided to the protected person;
(4) The significant actions taken by the conservator during the reporting period;
(5) A recommendation as to the continued need for conservatorship and any recommended changes in the scope of the conservatorship;
(6) Any other information requested by the court or useful in the opinion of the conservator;
(7) The compensation requested and the reasonable and necessary expenses incurred by the conservator; and
(8) An annual inventory of any item of tangible personal property with a value of two thousand five hundred dollars or more which has come into the conservator's possession or knowledge for the minor or protected person.
 
[Â¶35.]               If this Court were to use Koyneâs interpretation of this statute, then Janine would have to use her own funds to provide support for Mother and then seek a reimbursement from the Trust each year.  As we stated in Larson, [i]n a case such as this. . .[t]he [guardian] would be more financially prudent to attempt to terminate any assistance with finances for the disabled [person] in favor of outsiders as a form of financial self-defense.â 1998 SD 51, Â¶32, 579 NW2d at 29-30. The trial court found that Motherâs annuity and social security benefits amount to just $1,076 per month and that this amount was inadequate to provide the needed level of support.  Therefore, the Trust needs to supplement Motherâs monthly income, the funds to which Janine does not have access.
[Â¶36.]               Under SDCL 29A-5-408(7), the court is not precluded from determining and approving a current budget.  Specifically, this part of the statute provides that âthe compensation requested and the reasonable and necessary expenses incurred by the conservatorâ shall be included in the accounting.  If we were to hold that a conservator is not able to seek support for the protected person on a current basis, then the conservator would have to risk his or her own funds.  We, therefore, hold that the trial courtâs approval of the 2001 budget was not clearly erroneous.  
[Â¶37.]
Whether the trial court erred when it found it lacked jurisdiction to order Koyne to make payments from the Trust assets. 
[Â¶38.]               The income beneficiary of the Trust, Mother, is a resident of South Dakota.  Additionally, the accounting submitted by Janine was approved by the trial court.  The trial court found that Motherâs social security and pension income were inadequate to provide for her support.  Therefore, the trial court ordered the conservator to make demand upon the trustee for funds from the Trust.  However, Janine appeals the trial courtâs ruling in which it found it lacked jurisdiction over Koyne in his capacity as trustee to make payments to Mother, the income beneficiary.  We reverse the trial courtâs ruling.
[Â¶39.]               In Hanson v. Denckla, 357 US 235, 78 SCt 1228, 2 LEd2d 1283 (1958), the United States Supreme Court considered whether it had either in rem jurisdiction over the trust assets or in personam jurisdiction over the nonresident trustee.  Although the Court held that it had neither in rem jurisdiction over the out-of-state trust, nor in personam jurisdiction over the non-resident trustee, the trustee in that case had not appeared.  Id. at 250-51, 78 SCt at 1238, 2 LEd2d at 1285.  If a court has in personam jurisdiction over a trustee of a trust, then that court has jurisdiction to order the trustee to distribute trust assets.  See George T. Bogert, Trusts Â§ 177 (6 Ed 1987).  Koyne concedes that if the court properly has personal jurisdiction over the trustee, then there is jurisdiction to order Koyne to make payments from the Trust for Motherâs benefit.
[Â¶40.]               Janine asserts that Koyne voluntarily appeared and testified in the trial court proceedings concerning Trust matters.  Conversely, Koyne asserts he made a âspecial appearanceâ in the proceedings at the trial court and only appeared as an individual, not as trustee.  However, this Court has eliminated the distinction between general and special appearances.  In re J.W.W., 334 NW2d 513, 516 n4 (SD 1983).  Furthermore, under SDCL 15-6-12(b), jurisdictional objections must be raised as a defense in a motion.  Although Koyne filed a motion claiming a special appearance, within that same motion he requested the court act on other matters regarding the Trust.  He also sent interrogatories to the guardian, Janine.  
[Â¶41.] After a review of the record, it is apparent that Koyne testified, negotiated and litigated in his trustee capacity in the South Dakota proceeding.  Although he claims he only appeared as an individual, his involvement in the South Dakota proceedings makes his role as trustee subject to this Courtâs personal jurisdiction.  Therefore, the trial court had jurisdiction over him to order him to make payments pertaining to the issues before us in this appeal.
[Â¶42.] Further, in the alternative, the trial court had in personam jurisdiction over Koyne under this Stateâs Long Arm Statute.  SDCL 15-7-2, provides, in relevant part:
            Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of the following acts:
            . . .
(11)           Commencing or participating in negotiations, mediation, 
arbitration or litigation involving subject matter located in whole or in part within the state;
            (12)      Doing any act for the purpose of influencing . . . judicial
            . . . decision-making by any . . . state . . . official whose official function is being performed within the state, providing that an appearance to contest personal jurisdiction shall not be within this subsection; [or]
            . . .
(14)           The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States.
 
[Â¶43.] Janine argues that Koyne comes under the Long Arm Statute, and therefore, the jurisdiction of the trial court on several bases.  First, she argues that Koyne âparticipated in negotiations involving the payment of trust funds for the care of Mother who resides in South Dakota.â  Second, she contends that Koyne took part in litigation concerning the disbursements of trust funds for the care of Mother who resides in South Dakota.  Third, Janine argues that Koyne testified at trial âfor the purpose of influencing a South Dakotaâ judge regarding trust issues.
[Â¶44.]               We recently stated in Denver Truck and Trailer Sales, Inc, 2002 SD 127, 653 NW2d 88, that in order for the assertion of jurisdiction to comport with federal due process requirements, the assertion of jurisdiction must be such that it would not offend âtraditional notions of fair play and substantial justice.â  Id.  at Â¶10, 653 NW2d at 91 (citing International Shoe Co., v. Washington, 326 US 310, 316, 66 SCt 154, 158, 90 LEd 95 (1945)) (additional citations omitted).  In interpreting the standard for determining whether sufficient minimum contacts are present to support personal jurisdiction, we have stated:
            First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws.  Second, the cause of the action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one.  An important factor bearing upon the reasonableness of asserting jurisdiction is to determine if defendant's conduct and connection with the forum state are such   that he would have reasonably anticipated being brought into court there.
 
Denver Truck, 2002 SD 127, Â¶11, 653 NW2d at 91 (citing Opp v. Nieuwsma, 458 NW2d 352, 355-56 (SD 1990)) (internal citations omitted).  
[Â¶45.]               Janine argues that Koyne âpurposely availedâ himself to the privilege of acting in South Dakota by participating in negotiations regarding paying funds to Mother out of the Trust, litigating issues regarding the payments of such funds, testifying before the South Dakota trial court, and using funds from the Trust to pay his attorney in South Dakota.  Furthermore, the trial court proceedings were concerning the distribution of funds to Mother, a resident of South Dakota.  We agree with Janine that there were sufficient minimum contacts with South Dakota to make personal jurisdiction over Koyne proper.  This jurisdiction also is supported by the fact that Koyne, as trustee, could have reasonably anticipated being brought into a South Dakota court after he refused to make payments from the Trust to Mother. 
[Â¶46.]               For the foregoing reasons, we hold that the trial court had personal jurisdiction over Koyne, as Trustee, to order him to make payments from the Trust regarding the issues of compensation for Janineâs care of Mother, expenses for the years 2000 and 2001, and the attorney fees.
[Â¶47.]               SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.