#24216-rev in pt, aff in pt & rem-RWS

**2007 SD 41**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
CONSERVATORSHIP OF
LELA IRWIN,
A Protected Person.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ARTHUR L. RUSCH
Judge

* * * *

THOMAS H. FRIEBERG of
Frieberg, Nelson & Ask
Beresford, South Dakota                  Attorneys for appellant
                                         Mary Lou Young.


LUCILLE M. LEWNO
Fox, Youngberg & Lewno
Yankton, South Dakota                    Attorneys for appellee,
                                         Stephanie Maxon.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **04/25/07**

#24216

SABERS, Justice

[¶1.]    Mary Lou Young (Young) was appointed for her mother, Lela Irwin (Irwin), as her conservator and guardian.  After Irwin's death, Young attempted to have the circuit court approve the conservatorship's final accounting.  A granddaughter of Irwin, Stephanie Maxon (Maxon), and the attorney appointed for Irwin objected to the final accounting.  Young appealed after the circuit court refused to approve the accounting and "surcharged"[1] Young for over $70,000.  We reverse in part, affirm in part and remand.

### FACTS

[¶2.]    In 1999, eighty-three-year-old Irwin was placed at the Human Services Center (HSC) in Yankton, SD.  Shortly thereafter, Young, Irwin's only living child,[2] petitioned the circuit court to become Irwin's guardian and conservator.  The court initially approved Young as a temporary guardian and conservator, and later Young was approved as the permanent guardian and conservator.

[¶3.]    Almost immediately after her permanent appointment, Young petitioned the circuit court in South Dakota to transfer the guardianship and conservatorship to North Dakota.  Young resided in North Dakota.  In the transfer petition, she informed the circuit court that she had moved Irwin to a care facility in

---

1.    Surcharge means:  "1. To impose additional ([usually] excessive) tax, charge, or cost." or "3. (Of a court) to impose a fine on a fiduciary for breach of duty."  Black's Law Dictionary 682 (Bryan A. Garner ed., 2d pocket ed 2001).

2.    The circuit court noted in its memorandum opinion that Young represented herself as Irwin's "only living relative."  Later, the court discovered there were seven grandchildren.

Jamestown, North Dakota. Irwin was not actually moved to North Dakota until fifteen months later.

[¶4.] When Young did not file the statutorily required annual guardian report or annual account as conservator, Irwin's counsel asked the circuit court to issue an order to show cause requiring Young to file the reports. Young filed the annual report and Irwin's counsel objected to the report.

[¶5.] On October 9, 2001, a hearing was held on the show cause order, the motion to transfer and the objections to the annual report. Young filed an amended annual report at the hearing. She sent it to three of the grandchildren,[3] but they did not have an opportunity to file objections as it was sent the day of the hearing. The circuit court approved the annual report but decided to retain jurisdiction over the conservatorship until Young commenced proceedings in North Dakota.

[¶6.] The circuit court ordered Young to sell some personal property that had been purchased for Irwin's care but retained in Young's home after Irwin was moved to the care facility. It also ordered her to sell Irwin's trailer and contents after notice was given to all interested parties and to post a $200,000 bond. The court forbade Young from making any payments to herself or from moving Irwin from the North Dakota care facility without prior court approval and from denying the grandchildren access to Irwin.

---

3. The other four grandchildren are Young's children.

[¶7.]     On February 13, 2002, Young again petitioned to transfer the guardianship and conservatorship to North Dakota.  She provided the circuit court with an order from the North Dakota circuit court that appointed her guardian and conservator effective upon the termination of South Dakota's jurisdiction.  Irwin's counsel objected to the transfer, but the circuit court granted the guardianship transfer.  The court retained jurisdiction over the conservatorship until a final accounting was approved.

[¶8.]     After thirteen months, Young submitted a second annual report and motion to transfer.  Irwin's counsel again objected to the report to which Young filed responses.  A hearing was held on April 15, 2003 where the circuit court found Young breached her fiduciary duties by allowing Irwin's assets to be deposited into joint accounts[4] instead of a guardianship account.  The motion to transfer was denied because Irwin's HSC bill had not been paid.  The circuit court ordered Young to prepare an amended accounting comprised of all the income and disbursements since the last approved account and to separate the income into a guardianship account.  On July 29, 2003, Young filed the amended annual report, but did not obtain a hearing to receive court approval.

[¶9.]     Irwin died on October 19, 2003.  Young did not notify the South Dakota or North Dakota court.  The South Dakota court was informed of the death when Maxon asked the court to order Young to file a final accounting, terminate the life estates that existed in various lands and probate Irwin's will.  The North Dakota

_____

4.     The accounts were held in Irwin's and various grandchildren's names.

court was informed when the surety company contacted it about the status of the bond.

[¶10.] Irwin's attorney requested and was granted $1,145.78 in attorney's fees. Young filed the second amended annual report and a final accounting on March 9, 2004. Attorneys for Irwin and Maxon filed objections to the reports. At that time, Young's attorney, David Hosmer, filed responses to Maxon's and Irwin's attorney's motions and made his own motion for approval and payment of his attorney's fees.

[¶11.] Young filed an amended final accounting in August 2004, but did not schedule a hearing to obtain the court's approval. Again, Irwin's attorney and Maxon objected to the amended final accounting. Attorney Hosmer filed a subsequent motion for attorney's fees and a motion to withdraw because Young was not communicating with him. The court approved his fees and his withdrawal from the case.

[¶12.] Although Young repeatedly stated she did not want compensation for her services, on January 5, 2006, she filed a petition seeking payment of $25,125 for her services as guardian and conservator, which was subsequently denied. That same day, Irwin's attorney filed a motion for an additional $2,614.35 in attorney's fees from the estate, which was granted.

[¶13.] The final hearing in this case was held on January 6, 2006. Young was the only witness. After hearing her testimony and counsel's arguments, the trial court ruled in favor of Maxon and Irwin's attorney. It found Young had breached her fiduciary duty and engaged in self-dealing by accessing funds held jointly with

Irwin and the other grandchildren without prior court approval. Young was "surcharged" for $70,041.58. This amount consisted of $1,720 for the premiums paid on the North Dakota bond, $3,280 in North Dakota attorney's fees and the balance is the amount of the estate accessed without prior court approval. Young appeals[5] and raises the following issues:

1. Whether the circuit court was clearly erroneous when it failed to approve the final accounting.

2. Whether the circuit court erred in holding Young breached her duty of care as conservator.

3. Whether the circuit court erred in entering the $70,041.58 judgment against Young.

## STANDARD OF REVIEW

[¶14.] "In guardianship proceedings, the trial court's findings of fact are reviewed under the 'clearly erroneous' standard." *In re* Guardianship and Conservatorship of Miles, 2003 SD 34, ¶11, 660 NW2d 233, 236 (quoting *In re* Guardianship of Larson, 1998 SD 51, ¶13, 579 NW2d 24, 27) (additional citations omitted). Under this test, "[w]e will not overturn the trial court's findings unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake was made." *Id.* Any legal questions and conclusions of law are reviewed de novo. Estate of Howe, 2004 SD 118, ¶16, 689 NW2d 22, 27 (additional citations omitted).

---

5. During the appeal, Maxon objected to Appendix A of Young's reply brief. No response was filed and the objection was granted on February 26, 2007.

[¶15.] **Whether Young breached her duty of care as conservator and should be surcharged for the entire amount of funds accessed without prior court approval.**[6]

[¶16.] SDCL 29A-5-411 explains that "[a] conservator . . . shall act as a fiduciary and in the best interests of the . . . protected person. . . ." The conservator "shall apply the income and principal of the estate as needed for the protected person's support, care, health, and if applicable, habilitation or therapeutic needs." SDCL 29A-5-405. Moreover, the conservator must "act in the protected person's best interests and exercise reasonable care, diligence, and prudence." *Id.*

[¶17.] The circuit court held Young breached her fiduciary duty by utilizing assets of the estate to pay for Irwin's care that were held jointly by Irwin and various grandchildren. Some conservatorship statutes authorize the conservator to pay claims and pay any bill incurred for the benefit of the protected person without prior court authorization. *See* SDCL 29A-5-411. However, SDCL 29A-5-420(7) requires the conservator seek prior court authorization before "withdraw[ing] funds from a multiple-party bank account. . . ." Young did not obtain prior court authorization.

[¶18.] Citing SDCL chapter 55-2 *et seq*, the circuit court reasoned that not only does a conservator have a fiduciary duty to care for the protected person and his or her estate, but he also acts as trustee in managing the protected person's property and must protect any beneficiaries' interests as well. In that respect, Maxon argued and the circuit court agreed, that Young engaged in self-dealing by

---

6. We have combined the relevant issues.

#24216

accessing jointly held assets (Maxon's joint accounts and bonds) in order to pay for Irwin's care, instead of using other sources (Young's and her children's accounts). It noted that some of Young's children's accounts were accessed, but Young was not the one who accessed them. Instead, Marquette Bank accessed these accounts when it was overseeing the conservatorship.[7]

[¶19.]    According to Maxon and the circuit court, this self-dealing resulted in Young and her children receiving more than their intended share of Irwin's estate. During the last hearing, Irwin's counsel presented a spreadsheet[8] which purported to demonstrate the value of the estate at the start and end of the conservatorship along with the beginning percentage of the estate Young and each grandchild was to receive and the percentage each individual received once Irwin died. According to the document, Maxon was to receive 22.78% of the estate in the beginning of the conservatorship and received 20.46%. Young was to receive 40.45% and received 56.79%.

[¶20.]    In most conservatorship cases, the conservators are found to have breached their fiduciary duty when the estate money is used for personal reasons and not used for the care of the protected person. *See* Ward v. Lange, 1996 SD 113, ¶15, 553 NW2d 246, 251 (finding breach of fiduciary duty where fiduciaries commingled trust funds with their own and failed to set aside funds for protected person); *In re* Estate of Gardner, 845 P2d 1247, 1254 (NM Ct App 1992) (noting a

---

7.    Young used Marquette Bank to manage Irwin's estate for the first eighteen months of the conservatorship.

8.    The spreadsheet is attached to the opinion.

-7-

conservator has similar duties as an executor and case law demonstrates it is improper for executor to buy personal items with estate funds). Or when the conservator loses estate property or money by placing it in unsafe investments. *In re* Taylor's Estate, 58 SD 365, 236 NW 365, 367 (1931) (finding guardian liable when he permitted funds to be deposited in a bank he knew was unsafe). This case is peculiar in that there is not an allegation that the money spent was not used for the care of the protected person, but rather the *wrong* money was used to care for the protected person.

[¶21.]      We agree that Young breached her fiduciary duty by failing to meet the statutory requirements. She did not obtain court approval before accessing joint accounts as required by SDCL 29A-5-420(7). However, to remedy this breach, the circuit court required *total* reimbursement of funds accessed without court approval. While it does appear that Young and some of her children received more than their initial share, the proper remedy is not surcharging Young for the entire amount cashed from joint accounts. According to the circuit court's own memorandum opinion, "[a] guardian is chargeable not only with the entire estate of the ward, both real and personal . . . but also with money or property *lost by reason of the guardian's negligence or failure of duty. . . .*" (citing 59 AmJur2d, Guardian and Ward, § 214). *See also In re Taylor's Estate*, 58 SD 365, 236 NW at 367. Technically, no money was "lost" from the estate. The improperly accessed joint account money went for Irwin's care. If none of Maxon's money had been accessed, she would have received more than her initial percentage of the estate. Therefore, Young should only be surcharged to the extent that she benefited from the breach of

duty.[9] At the beginning of the conservatorship, Marquette Bank utilized Young's family's money to pay for Irwin's care. Young should not be punished to the extent she attempted to equalize the estate, even though she failed to get court approval.[10]

[¶22.] In this respect, we reverse the circuit court and remand. Young should only be surcharged to the extent she improperly benefited from cashing the bonds without permission. If Young had sought court permission before accessing the joint accounts, some of Maxon's money would have been accessed to pay for Irwin's care and Young's family would not be required to pay the entire bill. She should not be held strictly liable for noncompliance with the statute and forced to pay the entire $65,041.58 accessed without court permission. The surcharged amount should then be distributed to all the heirs according to their beginning percentage.

[¶23.] The circuit court did not err in determining Young should pay the North Dakota attorney's fees of $3,820 and the North Dakota bond premiums. SDCL 29A-5-411(18) authorizes the conservator to "employ persons, including attorneys, accountants, investment advisors, or agents; to act upon their

---

9. Upon remand, the bonds should be calculated at the redeemed value, not the face value. Irwin's estate needed to cash these bonds early in order to pay the HSC and other bills and the calculated amount should be the redeemed value, not the face value as the bonds had not yet matured.

10. While Young appears to have received 17% more and Maxon seems to have received 2.32% less than originally allocated, it is difficult to ascertain from the record. The spreadsheet offered by Irwin's counsel contains some errors. For example, the beginning and ending guardianship balances listed at the top do not match the Totals in the spreadsheet. If the beginning guardianship balance of $555,854.23 is used, then Maxon was to receive 20.9% of the estate, rather than the 22.78% given as her beginning percentage. She actually received 20.46% of the estate for a difference of -.44%.

recommendations without independent investigation; to delegate to them any power, whether ministerial or discretionary; and pay them reasonable compensation . . . ." However, the estate should not be charged for the fees because neither the estate nor Irwin was benefited. *See Guardianship and Conservatorship of Miles*, 2003 SD 34, ¶¶30-31, 660 NW2d at 238-39. While she initiated proceedings in North Dakota, she never completed the transfer of the conservatorship to North Dakota, despite having almost two years to do so. This appears to be from her lack of diligence and care, so she, not the estate, should be responsible for these attorney's fees.

[¶24.]     The same rationale applies to the bond premiums. Young purchased a bond that was never useful to Irwin's estate as the conservatorship was never within North Dakota jurisdiction. The estate should not be liable for the bond premium of $1,720.

[¶25.]     Maxon made a motion for appellate attorney's fees in this case of $1,693.88. "[A]ttorney fees are allowed when there is a contractual agreement that the prevailing party is entitled to attorney fees or there is statutory authority authorizing an award of attorney fees." Fuller v. Croston, 2006 SD 110, ¶41, 725 NW2d 600, 612 (additional citations omitted). SDCL 15-17-38 provides in relevant part that, "[t]he court may award attorneys' fees from trusts administered through the court *as well as in probate and guardianship proceedings*." Furthermore, SDCL 29A-3-720 permits an award of beneficiary's attorney's fees when the services resulted "in a substantial benefit to the estate." Estate of Seefeldt, 2006 SD 74,

¶22, 720 NW2d 647, 654-55.  We award no attorney's fees as this appeal did not result in a substantial benefit to the estate.

[¶26.]      We reverse the circuit court's decision to surcharge Young the entire amount of joint account funds accessed without prior court approval and remand for a determination of a proper surcharge consistent with this opinion.  In all other aspects, we affirm.

[¶27.]      GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

Beginning Guardianship Balance   $555,854.23  
Income   $488,117.99  
Expenses   $631,082.11  
Adjustments   $10,012.03  
TOTAL   $422,902.14  

## AMOUNTS INCLUDING LAND

| | Oct-99 $ | $ Received | Beginning % | % Received | Amount should have received | Difference | |
|---|---|---|---|---|---|---|---|
| Mary Lou Young (no bond cashed) | $ 206,310.00 | $ 238,199.45 | 40.45% | 56.79% | $ 171,063.14 | $ 67,136.31 | (overpaid) |
| Amy DesLauriers | $ 2,500.00 | $ 2,500.00 | 0.49% | 0.60% | $ 2,072.89 | $ 427.11 | (overpaid) |
| Dione Hagen (no bond cashed) | $ 57,317.12 | $ 51,016.81 | 11.24% | 12.16% | $ 47,524.82 | $ 3,491.99 | (overpaid) |
| Sheena DesLauriers | $ 36,734.28 | $ 6,118.88 | 7.20% | 1.46% | $ 30,458.44 | $ (24,339.56) | (underpaid) |
| Laurie Miller | $ 30,000.00 | $ - | 5.88% | 0.00% | $ 24,874.67 | $ (24,874.67) | (underpaid) |
| Stephanie Maxon | $ 116,188.00 | $ 85,840.00 | 22.78% | 20.46% | $ 96,337.96 | $ (10,497.96) | (underpaid) |
| Kevin Irwin | $ 30,990.00 | $ 35,794.00 | 6.08% | 8.53% | $ 25,695.54 | $ 10,098.46 | (overpaid) |
| Ann Marie Decker | $ 30,000.00 | $ - | 5.88% | 0.00% | $ 24,874.67 | $ (24,874.67) | (underpaid) |
| Not allocated | $ - | | 0.00% | 0.00% | $ - | $ - | |
| TOTALS | $ 510,039.40 | $ 419,469.14 | 100.00% | 100.00% | $ 422,902.14 | $ (3,433.00) | |

## AMOUNTS EXCLUDING LAND

| | Oct-99 $ | $ Received | Beginning % | % Received | Amount should have received | Difference | |
|---|---|---|---|---|---|---|---|
| Mary Lou Young (no bond cashed) | $ 60,260.00 | $ 77,308.45 | 23.30% | 56.45% | $ 39,961.16 | $ 37,347.29 | (overpaid) |
| Amy DesLauriers | $ 2,500.00 | $ 2,500.00 | 0.97% | 1.83% | $ 1,657.86 | $ 842.14 | (overpaid) |
| Dione Hagen (no bond cashed) | $ 57,317.12 | $ 51,016.81 | 22.16% | 37.25% | $ 38,009.60 | $ 13,007.21 | (overpaid) |
| Sheena DesLauriers | $ 36,734.28 | $ 6,118.88 | 14.20% | 4.47% | $ 24,360.18 | $ (18,241.30) | (underpaid) |
| Laurie Miller | $ 30,000.00 | $ - | 11.60% | 0.00% | $ 19,894.37 | $ (19,894.37) | (underpaid) |
| Stephanie Maxon | $ 41,868.00 | $ - | 16.19% | 0.00% | $ 27,764.59 | $ (27,764.59) | (underpaid) |
| Kevin Irwin | $ 30,000.00 | $ - | 11.60% | 0.00% | $ 19,894.37 | $ (19,894.37) | (underpaid) |
| Ann Marie Decker | $ - | $ - | 0.00% | 0.00% | $ - | $ - | |
| Not allocated | $ - | | 0.00% | 0.00% | $ - | $ - | |
| TOTALS | $ 258,679.40 | $ 136,944.14 | 100.00% | 100.00% | $ 171,542.14 | $ (34,598.00) | |

422,902.14  Subtotal  
-251,360.00  less AMOUNT for land  
171,542.14  TOTAL  

FILED  
JAN - 5 2006  
Carolyn F. Parker  
YANKTON COUNTY CLERK OF C  

EXHIBIT  
12  
1-5-06 vor  

PENGAD 800-631-6989