#28050-r-GAS
**2017 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
GUARDIANSHIP AND CONVERSATORSHIP
OF DEAN A. NELSON, a Protected Person.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  SIXTH JUDICIAL CIRCUIT
SULLY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

MATTHEW P. BOCK
JAMES A. POWER of
Woods, Fuller, Shultz & Smith
Sioux Falls, South Dakota                    Attorneys for appellant
                                             Elizabeth Nelson.


ROBERT B. ANDERSON of
May, Adam, Gerdes &
 Thompson, LLP
Pierre, South Dakota                         Attorneys for appellee Dean A.
                                             Nelson.


RONALD A. PARSONS, JR. of
Johnson Janklow Abdallah
 Reiter & Parsons LLP
Sioux Falls, South Dakota                    Attorneys for appellee Chet
                                             Groseclose.

* * * *

ARGUED OCTOBER 4, 2017
OPINION FILED **11/01/17**

MARK A. MORENO of
Moreno, Lee & Bachand, P.C.
Pierre, South Dakota

MARGO D. NORTHRUP of
Riter, Rogers, Wattier
  & Northrup, LLP
Pierre, South Dakota

Attorneys for appellee Georgia
K. Hanson.

Attorneys for appellee Angela L.
Nix.

#28050

SEVERSON, Justice

[¶1.]        Elizabeth Nelson appeals a circuit court order approving the redrafting of her husband Dean Nelson's will.  The new will eliminates a trust established for Elizabeth's benefit consisting of Elizabeth's lifetime, one-half interest in the residue of Dean's estate.  The change in the will was proposed upon the petition of Dean's conservator, Chet Groseclose (Conservator), after Dean was diagnosed with Alzheimer's disease.  Elizabeth raises one issue on appeal: whether the circuit court erred in permitting Conservator to adopt the new will eliminating Elizabeth's interest in the residuary estate.  We reverse.

## Background

[¶2.]        Dean Nelson owned and operated a successful farming operation near Onida, South Dakota.  Dean has four daughters from his first marriage: Georgia Hanson, Deborah Bouchie, Carol Nelson, and Angela Nix.  In 1978, Dean married Elizabeth Nelson.  The pair lived in Onida, then moved to Las Vegas, Nevada, where they currently reside.

[¶3.]        On September 30, 2008, Dean and Elizabeth entered into a postnuptial agreement, which replaced a prior prenuptial agreement.  In the postnuptial agreement, they agreed to the disposition of Dean's property after his death, and provided that Dean would not allow his durable power of attorney to amend his will.  Also in 2008, Dean made a will acknowledging the postnuptial agreement and making other testamentary gifts.  The 2008 will provided that if Elizabeth were to survive Dean, one-half of Dean's residuary estate would be held in trust for Elizabeth.  Under the trust, Elizabeth was entitled to receive all net income and as

-1-

much of the principal as the trustees deemed necessary for Elizabeth's health and comfort. Upon her death, the remainder of the trust would pass in accordance with the other half of the residue, which was to be distributed in equal shares to three of Dean's four daughters.

[¶4.] In September of 2012, Dean drafted a new estate plan including a pourover will and trust agreement. The trust agreement acknowledged the postnuptial agreement and essentially echoed the terms of the 2008 will, except that the one-half of Dean's estate not belonging to Elizabeth would be placed in trust for three of Dean's four daughters. On February 11, 2013, Dean had yet another estate plan drafted. This plan mirrored the 2008 and 2012 estate plans but added Dean's fourth daughter to the trust made up of half of his residuary estate.

[¶5.] After the 2013 plan was drafted, Dean was diagnosed with Alzheimer's. On April 18, 2013, Conservator was temporarily appointed to oversee Dean's estate. The circuit court made the appointment permanent in September of 2013. Conservator petitioned the circuit court to change Dean's February 11, 2013 estate plan. Among other things, Conservator proposed replacing the 2013 plan with a newly drafted will. The proposed will would omit Elizabeth from the residuary estate and allow for the entire residue to be distributed equally among Dean's four daughters.

[¶6.] At a circuit court hearing on the proposed will on December 13, 2013, Conservator, Dean's daughters, and Elizabeth instead stipulated to a compromise will. That will allowed Elizabeth to retain her one-half interest in the residue

within a trust funded with contributions made before the payment of estate tax. Conservator signed the compromise will on December 30, 2013.

[¶7.]     On September 28, 2016, in the tenth report to the circuit court on Dean's estate, Conservator again petitioned for a new will for Dean, changing the residuary clause to eliminate Elizabeth's trust and with it, her one-half interest in the residuary. The entire residuary estate would instead be divided equally among Dean's four daughters. Elizabeth objected to these changes to Dean's will as well as certain other requests from the Conservator regarding distributions. A hearing on the matter was held on October 12, 2016. No witnesses were called and no exhibits were presented. The circuit court approved the new will in an order on October 27, 2016. Elizabeth appeals, raising one issue: whether the circuit court erred in permitting Conservator to adopt a new will eliminating Elizabeth's interest in the residuary estate.

## Analysis

[¶8.]     Matters of statutory interpretation are reviewed de novo. *Milstead v. Johnson*, 2016 S.D. 56, ¶ 7, 883 N.W.2d 725, 729. In *In re Conservatorship of Didier*, 2010 S.D. 56, 784 N.W.2d 486, we applied de novo review to the question whether SDCL 29A-5-420(3)∗ allowed for the replacement of a trustee by a conservator. *Id.* ¶¶ 5-6, 784 N.W.2d at 489-90.

[¶9.]     Appellees argue the circuit court's order to rewrite Dean's will should be evaluated for an abuse of discretion. They claim the text of SDCL 29A-5-240

---

∗     29A-5-420(3) allows a circuit court to authorize a conservator

> [t]o amend or revoke trusts, or to create or make additions to revocable or irrevocable trusts, even though such trusts may extend beyond the life of the protected person[.]

plainly gives a circuit court discretion to approve the redrafting of a will by a conservator by requiring a circuit court to balance a number of factors in making its determination. Appellees point out that this Court has previously held the abuse of discretion standard applies to a circuit court's decision to appoint a conservator, *In re Conservatorship of Gaaskjolen*, 2014 S.D. 10, ¶ 9, 844 N.W.2d 99, 101, and to terminate a conservator, *In re Guardianship of Stevenson*, 2013 S.D. 4, ¶ 22, 825 N.W.2d 911, 916; *Guardianship & Conservatorship of Fischer*, 2008 S.D. 51, ¶ 6, 752 N.W.2d 215, 217. "An abuse of discretion is 'a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Gaaskjolen*, 2014 S.D. 10, ¶ 9, 844 N.W.2d at 101 (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616).

[¶10.] Appellees also note that a circuit court's findings "[i]n guardianship proceedings . . . are reviewed under the 'clearly erroneous' standard." *In re Conservatorship of Irwin*, 2007 S.D. 41, ¶ 14, 732 N.W.2d 411, 414 (quoting *In re Guardianship and Conservatorship of Miles*, 2003 S.D. 34, ¶ 11, 660 N.W.2d 233, 236). "Under [that] standard, we do not analyze 'whether this Court would have made the same finding that the trial court did,' but rather we look at 'whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed.'" *Tisdel v. Beadle Cty. Bd. Of Comm'rs*, 2001 S.D. 149, ¶ 5, 638 N.W.2d 250, 252-53 (quoting *In re Estate of Roehr*, 2001 S.D. 85, ¶ 4, 631 N.W.2d 600, 601).

#28050

[¶11.]     None of the cases cited by the parties pertain exactly to the determination made by the circuit court here: allowing a conservator to redraft a will. The proper standard can be found simply by evaluating the actions of the circuit court in this case. Such an exercise brings about the conclusion that all three standards mentioned above are applied in the context of South Dakota's conservatorship statute. SDCL 29A-5-420 provides in pertinent part:

> Upon petition therefor, the court *may* authorize a conservator to exercise any of the powers over the estate or financial affairs of a protected person which the protected person could have exercised if present and not under conservatorship, including the powers . . . [t]o make, amend, or revoke a will.
>
> The court, in authorizing the conservator to exercise any of the above powers, *shall primarily consider the decision which the protected person would have made,* to the extent that the decision can be ascertained. The court *shall* also consider the financial needs of the protected person and the needs of legal dependents for support, possible reduction of income, estate, inheritance or other tax liabilities, eligibility for governmental assistance, the protected person's prior pattern of giving or level of support, the existing estate plan, the protected person's probable life expectancy, the probability that the conservatorship will terminate prior to the protected person's death, and any other factors which the court believes pertinent.

(Emphasis added.)

[¶12.]     Under this statute, de novo review applies only to interpret the meaning of the text. As to this case, the text of the statute is clear: a court "may authorize" a conservator to revoke and redraft a will. Thus, there is no issue of statutory interpretation, and we do not review the circuit court's order de novo.

[¶13.]     The text also very clearly states that a court "*shall* primarily consider the decision which the protected person would have made, to the extent that the decision can be ascertained." *Id.* (emphasis added). It also plainly requires the

circuit court to review eight other factors as well as any factors the circuit court "believes pertinent." But while the court is required to consider these nine factors, it has discretion in weighing them. As such, we review the court's decision to permit a conservator to amend a will for an abuse of discretion.

[¶14.] The record here, however, is unclear as to the factual findings of the circuit court and the application of the facts to the statute. The circuit court only touched on its potential factual findings in the October 12, 2016 hearing:

> Well, I've got to tell you, under the circumstances, my sympathies certainly lie with the proposal to modify the Will given the experience we've had with Liza's unwillingness to participate in gifts and generally has been somewhat uncooperative in the process here.
>
> I'm somewhat concerned. I think, at least in my quick look at this is that the major issue with respect to that or the major driving point of it is the impact that the equipment sale has on the daughters as it relates to them being able to receive that benefit of the sale of the equipment, which now becomes part of the estate and, by virtue thereof, half of which would go into the residuary trust.
>
> But it appears to me and as we've discussed here, that the tax implications in terms of reduction of the estate are probably relatively insignificant. The benefit to the daughters is primarily by acceleration of a gift to them rather than—and we're speculating on, obviously, who among the parties here may pass first. We're speculating then as to how long, if Dean passed first and how long Liza survived him and received the benefits of the income off of the trust. So there's a great deal of speculation there as to what benefit, if any, Liza would obtain from the trust and, frankly, also what benefit, if any, the children actually receive unless by a substantially accelerated direct gift to them out of the estate.
>
> So as I said, I think primarily on the fact that non-essential estate property has been disposed of through the farm machinery and by that, the daughters would perhaps lose a certain percentage of the benefit they might otherwise obtain earlier, I'm going to agree that the trust—or that the Will may

be amended as proposed, including the references here to the Nevada residence and the paid-up life insurance and surplusage as it relates to the postnuptial and the non-contest clause that's been spoken of here.

[¶15.] These minimal oral findings were reflected in the circuit court's order on October 27, 2016. But the circuit court's statements, the hearing transcripts, and the circuit court's orders contain no factual findings based on evidence on which this Court could adequately review for an abuse of discretion. Thus, the abuse of discretion standard alone is also inappropriate in this case.

[¶16.] In-depth factual determinations are needed primarily as to what Dean's wishes would have been as well as to the other factors listed in the statute. The record in this case is devoid of evidence needed to make those required statutory findings. Dean's estate plan had consistently provided for Elizabeth to have a lifetime interest in one-half of Dean's residuary estate. At the October 12 hearing, no exhibits were entered into the record other than Conservator's tenth report on Dean's estate. No witnesses presented testimony. Only the arguments of counsel were presented to the circuit court. This was despite the fact that Elizabeth had objected to the proposed changes to Dean's will at the hearing.

[¶17.] This case therefore boils down to a lack of evidence to make factual determinations required by the statute—significantly, the record lacks evidence sufficient to primarily consider the decision that Dean Nelson would have made. Evidence on the record is missing, and thus we are left with "a definite and firm conviction that a mistake has been committed." *Tisdel*, 2001 S.D. 149, ¶ 5, 638 N.W.2d at 252-53 (quoting *Roehr*, 2001 S.D. 85, ¶ 4, 631 N.W.2d at 601). As noted above, factual determinations are reviewed for clear error. It was clearly erroneous

for the circuit court to make these important determinations changing Dean's estate plan without adequate factual findings based on evidence. Furthermore, it was an abuse of discretion to grant Conservator the power to redraft a will without making factual findings based on evidence.

## Conclusion

[¶18.] It must be emphasized that Conservator is asking to redraft the will of an incompetent individual. The proposed will significantly changes Dean's estate plan. This is a decision of great import. While the action is authorized by statute, absent strong and specific factual findings based on evidence in a fully developed record, the circuit court's factual findings were clearly erroneous. Thus, the circuit court's decision to authorize the Conservator to change the will was an abuse of discretion due to the lack of adequate factual findings. We reverse.

[¶19.] GILBERTSON, Chief Justice, and KERN, Justice, and JENSEN and GILES, Circuit Court Judges, concur.

[¶20.] JENSEN, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶21.] GILES, Circuit Court Judge, sitting for WILBUR, Retired Justice, disqualified.